LISA A. BRESNAHAN & another[1] *vs.* EUGENE F. MCAULIFFE & another.[2]

No. 97-P-1065.

Essex. November 10, 1998. - July 14, 1999.

Present: PERRETTA, KASS, & FLANNERY, JJ.[3]

*Practice, Civil,* Discovery. *Emotional Distress. Negligence,* Emotional distress.

Nothing in the circumstances of a civil action warranted the imposition of sanctions before the close of discovery to preclude the plaintiffs from introducing any evidence of any emotional, mental, or psychological injuries because of alleged failure to comply with a discovery order; on the record presented, the defendants' motion for sanctions should not have been allowed. [280-281]

In a civil action, summary judgment on claims for intentional or reckless infliction of emotional distress was entered for the defendants based on an erroneous order precluding the plaintiffs from introducing any evidence of emotional injury: where the plaintiff's submissions demonstrated a reasonable expectation of proving that the defendants' conduct was extreme and outrageous and that the plaintiffs' emotional health was severely traumatized [283], and sufficient objective evidence of a physical manifestation of emotional distress [283-285], the matter was remanded for further proceedings.

CIVIL ACTION commenced in the Superior Court Department on July 6, 1995.

The case was heard by *Nancy S. Merrick,* J., on a motion for summary judgment.

*Edgar L. Kelley* for the plaintiffs.

*John D. Boyle* for the defendants.

PERRETTA, J. This appeal raises the issue whether summary

---

[1]Brendan M. Bresnahan.

[2]McAuliffe Funeral Service, Inc.

[3]This case was argued before Justices Perretta, Kass, and Flannery. Following the death of Justice Flannery, Justice Spina was added to the panel and participated in this decision.

judgment was correctly entered on the plaintiffs' complaint alleging the negligent and intentional infliction of emotional distress by reason of the manner in which the defendants provided funeral and burial services for the plaintiffs' stillborn son.[4] In seeking summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974), the defendants argued that the plaintiffs had failed to show a reasonable expectation of proving an essential element of their case, see *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991), that is, evidence of either physical or emotional harm. Their motion was granted on the basis of *Payton* v. *Abbott Labs*, 386 Mass. 540, 556 (1982), and an earlier order of a Superior Court judge precluding the plaintiffs, because of their alleged failure to comply with a discovery order, from offering any evidence of emotional harm. See Mass.R.Civ.P. 37(b)(2)(B), as amended, 390 Mass. 1209 (1984). We conclude that the sanction should not have been imposed upon the plaintiffs, consider the sufficiency of the evidence set out in their discovery responses, and reverse the judgment on their claims for emotional distress.

1. *The discovery sanction.* The plaintiffs filed their complaint on July 6, 1995. On October 20, they responded to the defendants' interrogatories and answered that they had received counseling for their emotional distress at the Holy Family Hospital, which they stated was situated in North Andover and which in fact is located in the neighboring town of Methuen.

When the defendants sought to inspect the hospital's records, the plaintiffs opposed the motion on the basis of the psychotherapist privilege provided by G. L. c. 233, § 20B. On January 5, 1996, the court entered an order directing the Holy Family Hospital to permit the defendants to inspect its records concerning or relating to the plaintiffs. According to an affidavit from a law clerk in the office of the plaintiffs' counsel, the defendants obtained the requested medical records on or about January 16, 1996.

Two motions were filed on February 15, 1996. The first was a joint motion in which the parties sought to extend the date for the completion of discovery to August 31, 1996. The second

---

[4]Although the plaintiffs' complaint sought damages on numerous theories of recovery, their arguments on appeal concern only the claims for emotional distress. We, therefore, do not consider the judgment in respect to any other counts set out in the complaint. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

motion was filed by the defendants, who sought to preclude the plaintiffs from introducing evidence of any emotional, mental, or psychological injuries because of their alleged failure to comply with the discovery order of January, 1996. The defendants represented in the motion that, after obtaining the January order allowing them to inspect the plaintiffs' hospital records, "it emerged that the plaintiff had provided false and inaccurate responses [to interrogatories] which misidentified the location of treatment undertaken." Both motions were acted upon on February 23. The parties' joint motion was allowed and the defendants' motion was denied without prejudice because of their failure to comply with Superior Court Rule 9A. The defendants thereafter apparently corrected their procedural misstep because the docket reflects that the motion, to which the plaintiffs did not respond, was allowed on March 6, 1996.

Next, on April 11 and May 6, 1996, the defendants deposed the plaintiffs individually. In their depositions, each described the counseling they had received at the Holy Family Hospital and gave the correct location of the hospital, Methuen. On May 10, 1996, the plaintiffs sought relief from the order entered two months earlier. They represented in their motion that they had opposed inspection of their medical records in order to protect any confidential information set out in those records, that they had believed, in good faith, that the hospital was situated in North Andover and did not realize that it was located a "mere one hundred yards into Methuen," and that they had not filed an opposition to the defendants' motion seeking sanctions because, prior to the allowance of that motion, the discovery period had been extended to August 31, 1996.

That motion was denied, and the plaintiffs were ordered to pay the defendants' attorney $500. The plaintiffs again sought relief from the March order on November 18, 1996. The motion was denied on the stated basis that they had not opposed the defendants' motion. The defendants then moved for summary judgment on December 11, 1996, and argued, in part, that because of the March order, the plaintiffs had no reasonable expectation of proving emotional harm.

We see nothing in the circumstances presented which supports imposition of the sanction in issue. The plaintiffs never refused to comply with any discovery order. That they opposed the defendants' request to inspect their hospital records did not constitute a refusal to comply, and the motion judge did not

regard it as such. Further, the order entered on that motion was directed to the hospital and not the plaintiffs. Moreover, the sanction was not imposed until the defendants alleged that the plaintiffs had supplied false and misleading information about the location of the hospital, an allegation which, based upon the chronology of events and supporting materials, is itself somewhat misleading.

Additionally, the error was corrected long before the date upon which discovery was to be completed. During that time, the plaintiffs made every effort to have the order lifted. Their motions reasonably and fairly could have been deemed motions to supplement their answers to interrogatories. See Mass.R. Civ.P. 26(e)(2), 365 Mass. 776 (1974). Finally, we think it reasonable to assume that the address of the hospital was information to which the public had ready access. The defendants never claimed that they were unable to locate the hospital and, therefore, unable to inspect the plaintiffs' medical records. Rather, the sole basis for their request, that the plaintiffs be precluded from offering proof of their claims of emotional harm, was that they had been given an erroneous address for the hospital. Simply put, the defendants' motion should not have been allowed. Compare *Roxse Homes Ltd. Partnership* v. *Roxse Homes, Inc.*, 399 Mass. 401, 404-406 (1987) (judgment entered against the defendant as sanction for failure to respond adequately to discovery requests for documents and to comply with court orders entered on those requests); *Bolton* v. *Massachusetts Bay Transp. Authy.*, 32 Mass. App. Ct. 654, 655-657 (1992) (defendant's expert witness precluded from testifying as to the results of his inspection of physical evidence which had been destroyed notwithstanding plaintiff's earlier request to be informed of its whereabouts and that, because the evidence was "vital," it be preserved); *Atlas Tack Corp.* v. *Donabed, ante* 221 (1999).

2. *The plaintiffs' undisputed allegations.* We recite the facts relevant to the plaintiffs' claims concerning emotional distress as they appear in their answers to interrogatories, depositions, and various affidavits.

On February 18, 1995, the plaintiff, Lisa Bresnahan, delivered a full-term, stillborn baby boy, Jared, at Lowell General Hospital. She and her husband, Brendan Bresnahan, then made arrangements for funeral and burial services for Jared. The plaintiffs expressed to the defendants their desire to provide

their son with services consistent with their religious beliefs and cultural customs. In the course of making these arrangements, the defendants advised the plaintiffs that a certain religious ceremony, which was of most importance to them, could not be conducted. That erroneous information was corrected after the plaintiffs consulted with officials of their church. The defendants next informed the plaintiffs that, because of the autopsy performed on Jared, his head had collapsed and his organs had been removed. Consequently, his physical appearance was so gruesome that it precluded the allowance of Lisa's requests that she be allowed to see and to hold Jared once before his burial, and that he be dressed in his christening gown, which, according to the defendants, could only be placed over his "mutilated" body.

The plaintiffs ultimately discovered that, in fact, an autopsy had not been performed upon Jared. By that time, however, it was too late for them to have an autopsy performed in order to ascertain why Jared had been stillborn. There were also other complaints about the services rendered by the defendants which the plaintiffs included among the reasons for which they sought counseling and which, if believed, would allow a jury to regard the defendants as either intentionally callous or incredibly insensitive.[5]

Almost immediately after the first involvement with the defendants and as a consequence of their actions, Lisa claims that she experienced uncontrollable crying spells, stomach pain, severe headaches, loss of concentration, depression, anger, anxiety, and the loss of her sexual relationship with Brendan. Brendan alleged that he suffered from numerous crying episodes, instances of stomach pain, nausea, body shakes, anxiety, depression, nightmares and periods of agonizing about Jared's anger with him on account of the manner in which his burial was conducted, and the loss of his sexual relationship with Lisa.

---

[5]For example, the plaintiffs were told that Jared's coffin was too small for the large teddy bear that the plaintiffs wished to be placed in his coffin for purposes of companionship; the limousine provided for the funeral procession was in such a disgraceful condition as to be regarded as disrespectful; flowers were not delivered to the gravesite, which had not been lined; the gravesite directions to the "mercy-meal" being offered by the plaintiffs were rambling, confusing, and insulting to the plaintiffs. These were all actions which the plaintiffs believed to be a callous disregard for their loss and reason for a public perception of their disrespect for Jared's life.

Although the plaintiffs did not seek medical attention to alleviate their physical symptoms, they did attend group grief-counseling sessions for ten months at the Holy Family Hospital. During that time, Lisa became pregnant. Once that fact became obvious, she and Brendan stopped attending the sessions because they had come to understand, through counseling, that her pregnancy could cause other group members great distress. According to the affidavits provided by two of the counselors, registered nurses with degrees in psychology and sociology, they witnessed the plaintiffs' symptoms (uncontrollable crying, stomach clutching, grimaces of physical pain) during group counseling sessions. Based upon their observations and the statements made to them by the plaintiffs, these affiants were of the opinion that each of the plaintiffs was suffering from "one of the most extreme cases" of emotional distress that either nurse had ever witnessed.

3. *The sufficiency of the anticipated evidence.* Little need be said on the plaintiffs' allegations concerning the intentional or reckless infliction of emotional distress. Summary judgment on those claims was based upon the erroneous order precluding the plaintiffs from introducing any evidence of emotional injury. Putting that order aside, we think the plaintiffs' submissions showed a reasonable expectation of proving that the defendants' conduct was extreme and outrageous and that it had a severe and traumatic effect upon their emotional health. See *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976).

We turn to the plaintiffs' claims for the negligent infliction of emotional distress. In *Payton* v. *Abbot Labs*, 386 Mass. at 556, the court held:

> "[I]n order for any of these plaintiffs to recover for negligently inflicted emotional distress, [they] must allege and prove [they] suffered physical harm as a result of the conduct which caused the emotional distress. . . . [F]urther, . . . a plaintiff's physical harm must either cause or be caused by the emotional distress alleged, and . . . the physical harm must be manifested by objective symptomatology and substantiated by expert medical testimony."

This "physical harm" requirement was "refine[d]" in *Sullivan* v. *Boston Gas Co.*, 414 Mass. 129, 134 (1993), "so as to achieve a just result in [that] case and to strike a proper balance

between the fear of fraudulent claims and the danger of shutting the doors of the courthouse to worthy plaintiffs." After discussion of recent decisions in other jurisdictions, various law review articles, and Restatement (Second) of Torts § 436A (1965), the court held, at 137-138:

> "A successful negligent infliction of emotional distress claim, in other words, must do more than allege 'mere upset, dismay, humiliation, grief and anger.' . . . Rather, plaintiffs must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial.

> "Expert medical testimony *may* be needed to make this showing. Medical experts, however, need not have observed an actual, external sign of physical deterioration. . . . They may consider, in the exercise of their professional judgment, the plaintiffs' description of the symptoms they experience. . . . The judge, then, will need to consider each case in its particular factual context. The length of time during which the physical harm manifested itself may provide a reliable indicator of the sufficiency of the evidence introduced. . . . Generally, though, the judge will use his or her discretion to evaluate the evidence, keeping in mind that the over-all goal is to determine whether the evidence sufficiently corroborates the plaintiff's claim of mental distress and to strike a wise balance between the fear of fraudulent claims and the danger that worthy claims will not be heard. See *Payton*, *supra* at 553." (Internal citations omitted) (emphasis supplied).

See *Migliori* v. *Airborne Freight Corp.*, 426 Mass. 629, 631-632 (1998) (although physical harm no longer required for a "cognizable" claim for the negligent infliction of emotional injuries, objective corroboration of alleged emotional distress still necessary).

In *Sullivan*, one of the plaintiffs (Sullivan) alleged that the defendant's negligence caused the explosion that destroyed his house. He sought compensation for the emotional distress suffered as a result of the explosion. According to an affidavit from

one of his doctors, Sullivan suffered from tension headaches, muscle tenderness in the back of his head, and problems with his ability to read and concentrate. Sullivan stated at his deposition that, as a result of the explosion, he suffered from sleeplessness, gastrointestinal distress, upset stomach, nightmares, depression, feelings of despair, difficulty in driving and working, and an "over-all 'lousy' feeling." *Id.* at 131. Applying the rule of *Payton*, as refined, to Sullivan's submissions in opposition to the defendant's motion for summary judgment, the court concluded that Sullivan could attempt "to establish at trial that [he] satisfied the physical manifestation requirement of *Payton* v. *Abbott Labs*, as well as the other elements of a cause of action for emotional distress which we set out in that case." *Sullivan* v. *Boston Gas Co.*, 414 Mass. at 140.

We see no qualitative difference sufficient to provide a distinction between the summary judgment materials submitted by the plaintiffs in the present case and those submitted in *Sullivan*. Here, the plaintiffs suffered stomach pain, nausea, body shakes, and reduced libido, distress sufficiently particularized to qualify as physcial manifestations of harm. See *Sullivan* v. *Boston Gas Co.*, 414 Mass. at 139-140. Indeed, the only distinction advanced by the defendants is that the plaintiffs failed to corroborate their physical symptoms with expert *medical* evidence. However, we see no *requirement* for medical evidence in *Sullivan*. As we read that case, it holds that the absence of medical evidence could make it more difficult, but not impossible, for a plaintiff to meet his burden of producing "sufficient objective evidence of physical manifestation of mental distress to survive a summary judgment motion." *Sullivan* v. *Boston Gas. Co.*, 414 Mass. at 139.

We conclude that the affidavits of the nurses, who had ample opportunity to observe and speak with the plaintiffs during the ten-month period of grief counseling, provided sufficient objective evidence of the plaintiffs' physical manifestations of their mental distress to survive the defendants' motion for summary judgment.

The judgment on counts five and six of the plaintiffs' complaint is reversed, and the matter is remanded to the Superior Court for further proceedings on those counts. The defendants' request for attorney's fees and double costs is denied.

*So ordered.*