Stephen C. **FITHIAN**, Jr., p.p.a.
Stephen C. **Fithian**, Sr., et al.,
**Plaintiffs, Appellants,**

v.

Edward **REED** and Martha **Reed**,
**Defendants, Appellees.**

No. 99–1898.

United States Court of Appeals,
First Circuit.

Heard Feb. 9, 2000.

Decided Feb. 29, 2000.

Thomas J. Callahan, with whom James J. McGovern and McGovern & Sullivan were on brief, for appellants.

David M. O'Connor, with whom John E. Matosky and O'Connor & Associates were on brief, for appellees.

Before SELYA, BOUDIN and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

In this case, the district court concluded as a matter of law that the risk of a neighbor's snowblower discharging snow and ice against a dining room window and breaking it, injuring a toddler standing inside, was unforeseeable, and that the homeowners therefore did not breach their duty of reasonable care. The plaintiffs appeal. Finding no evidence of any precaution that either defendant could or should have taken to avoid this unfortunate accident, we affirm.

As the summary judgment standard requires, we recount the facts in the light most hospitable to the non-movants (here, the plaintiffs). *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). In January 1996, Lisa Fithian and her two young children, Floridians all, were visiting her parents, Edward and Martha Reed, in Hingham, Massachusetts. On an inclement morning, John Zofchak, the Reeds' neighbor, trying to be helpful, undertook to clear their driveway with his snowblower (despite the fact that two cars were parked in the area). Snow was a novelty to the youngsters, so Mrs. Reed (while Mrs. Fithian was upstairs) encouraged them to join her at the family room window and watch the snowblower in operation.

After Mrs. Fithian returned, Mrs. Reed went outside in hopes of thanking Mr. Zofchak for the unsolicited favor. Not wanting to approach the snowblower too closely for fear of injury, Mrs. Reed stood in front of the house for roughly fifteen minutes and vainly attempted to catch Mr. Zofchak's attention. Meanwhile, Mrs. Fithian, desiring to give the fascinated children a better view of the snowblowing activity, brought them into the dining room (where the windows were closer to the driveway).

Mr. Reed entered the dining room shortly thereafter. At that point, Mr. Zofchak had begun to clear a narrow strip of driveway between the parked cars and the residence. Since the presence of the vehicles prevented him from directing the discharge to the left, he angled it to the right (i.e., toward the house). A few seconds later, the dining room window shattered and flying glass struck and severely injured three-year-old Stephen Fithian, Jr.

Invoking diversity jurisdiction, *see* 28 U.S.C. § 1332(a), Stephen and his parents sued the Reeds in the United States District Court for the District of Massachusetts.[1] Following pretrial discovery, the defendants moved successfully for summary judgment. This appeal ensued.

We review orders granting or denying summary judgment de novo. *See Garside*, 895 F.2d at 48. Summary judgment is appropriate if, after marshaling the evidence in the light most favorable to the non-movant, no genuine issue of material fact exists and the record reveals that the movant is entitled to judgment as a matter of law. *See Woods–Leber v. Hyatt Hotels of P.R., Inc.*, 124 F.3d 47, 49–50 (1st Cir.1997); *Garside*, 895 F.2d at 48; *see also* Fed.R.Civ.P. 56(c). State law supplies the substantive rules of decision in diversity cases, *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Woods–Leber*, 124 F.3d at 50, and the parties agree that Massachusetts law governs in this instance.

Under Massachusetts law, a tort plaintiff must show that (1) the defendant owed him a duty, (2) the defendant breached that duty, (3) the breach constituted a proximate cause of the ensuing harm, and (4) the breach caused actual injury. *See Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 522 (1st Cir.1990); *Swift v. United States*, 866 F.2d 507, 508–09 (1st Cir.1989). Although such matters most need not concern us.

---

1. The plaintiffs also sued the operator of the snowblower. That claim has been settled and

often comprise grist for the jury's mill, they may be resolved on summary judgment when the facts lead ineluctably to a particular outcome. *See Woods–Leber,* 124 F.3d at 51; *see also Mullins v. Pine Manor College,* 389 Mass. 47, 449 N.E.2d 331, 338 (Mass.1983); *Roderick v. Brandy Hill Co.,* 36 Mass.App.Ct. 948, 631 N.E.2d 559, 560 (Mass.App.Ct.1994). This is such a case: as the district court ruled, there is no way in which a rational factfinder, on this record, supportably could conclude that the defendants breached an actionable duty to the plaintiffs. We explain briefly.

■ As homeowners and hosts, the defendants had a duty to take into account the extant circumstances (including those known to them and those of which they should have known) and to maintain their property in a reasonably safe condition. *See Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43, 52 (Mass.1973); *Polak v. Whitney,* 21 Mass.App.Ct. 349, 487 N.E.2d 213, 215 (Mass.App.Ct.1985). It was, therefore, incumbent upon them to act reasonably in regard to factors such as the likelihood of injury to persons foreseeably upon the premises, the seriousness of any potential injury, and the burdens associated with risk avoidance.

■ This standard—reasonable care under all the circumstances—is a flexible one. As the plaintiffs suggest, it may at times involve a duty to prevent foreseeable injury caused by a third person who has come upon a defendant's premises. *See Flood v. Southland Corp.,* 416 Mass. 62, 616 N.E.2d 1068, 1075 (Mass.1993); *Jesionek v. Massachusetts Port Auth.,* 376 Mass. 101, 378 N.E.2d 995, 997 (Mass. 1978). On other occasions, it may impose an obligation to warn guests of an unreasonable, nonobvious danger of which the host is aware. *See Polak,* 487 N.E.2d at 215–16. The standard does not, however, bind homeowners to anticipate and guard against "what is unusual and unlikely to happen, or what, as is sometimes said, is only remotely and slightly probable." *Zompanti v. Ferguson,* 336 Mass. 167, 142

N.E.2d 903, 904 (Mass.1957) (quoting *Falk v. Finkelman,* 268 Mass. 524, 168 N.E. 89, 90 (Mass.1929)). In fine, the standard does not make a homeowner an insurer of a guest's safety, nor does it require her to exercise extreme prudence, employ heroic measures, or display utter prescience. *See Toubiana v. Priestly,* 402 Mass. 84, 520 N.E.2d 1307, 1310 (Mass.1988).

■ The touchstone, then, is ordinary prudence—and the critical question becomes "whether the jury reasonably could have concluded that, in view of all the circumstances, an ordinarily prudent person in the defendant's position would have taken steps, not taken by the defendant, to prevent the accident that occurred." *Id.* In most cases (though not always), this question correlates with the foreseeability of the risk of harm, for the more foreseeable the injury, the higher society's expectations that reasonable people will take precautions. *See Whittaker v. Saraceno,* 418 Mass. 196, 635 N.E.2d 1185, 1188–89 (Mass.1994) (holding that society should not place the burden of preventing a violent crime on a property owner without proof that the owner knew or should have known of danger and possible preventive steps, even though crime is always possible and to a certain extent foreseeable); *Mounsey,* 297 N.E.2d at 52 (explaining that the duty of care is defined in part by the likelihood of injury).

■ In this case, our canvass of the record convinces us that no reasonable jury could have determined that the defendants failed to take any precaution that ordinary prudence demanded. To be sure, the plaintiffs assert conclusorily that Mr. Reed should have monitored the use of a dangerous instrumentality on his property—but the record does not disclose either that Mr. Reed had advance notice of Mr. Zofchak's intentions or that he had any practical opportunity to stop Mr. Zofchak in the act. Even on the plaintiffs' version of the facts, Mr. Reed became aware that

snowblowing was in progress only moments before the accident occurred.

Mrs. Reed likewise lacked both notice and any realistic opportunity to alter the course of events. In all events, the record is uncontradicted that she tried without success to hail Mr. Zofchak. Given the swirling snow, the noise made by the machinery, and the danger inherent in approaching the running snowblower, this lack of success is entirely understandable. And the plaintiffs have been unable to suggest any other way that Mrs. Reed rewardingly could have intervened—there is, for example, no evidence to suggest that she had the vocal capacity to be heard from a distance over the noise of the machinery.

In an effort to deflect the force of these points, the plaintiffs argue that the defendants should have removed the cars from the driveway, thus enabling the snowblower to maneuver more freely and to discharge the accumulation away from the house, or that they should have warned the Fithians not to go near the dining room window. These arguments do not withstand scrutiny. In the first place, nothing in the record indicates that either defendant knew that snow was being discharged against the house in time to take any effective action. In the second place, the *nisi prius* roll is barren of any evidence that the parked vehicles presented a realistic danger.

The fact that the Reeds lacked the opportunity to take precautions pertains here as well. Given Mr. Zofchak's unsolicited appearance, moving the cars necessarily would have entailed approaching a man operating a concededly dangerous instrumentality and asking him to halt work while the vehicles were moved. Mrs. Reed considered making such an approach (albeit for another reason), and nothing in the record serves to cast doubt upon the validity of her conclusion that approaching the running snowblower would have been so perilous as to fall outside the realm of ordinary prudence. Finally, it was Mrs. Fithian, not the Reeds, who brought the children into the dining room, and as the only adult near the side of the house for any length of time, she was in the best position to anticipate any looming danger. The Reeds, therefore, would not be expected to warn her (or those in her charge).[2] *See Polak*, 487 N.E.2d at 215–16.

■ The case law confirms the appropriateness of *brevis* disposition here. To overcome summary judgment in a tort suit against an owner or occupant of real property, a plaintiff must put forth evidence of negligence, i.e., evidence of the defendant's failure to exercise due care. *See Toubiana*, 520 N.E.2d at 1310. Evidence that a precaution feasibly could have been taken to prevent a foreseeable injury sometimes may suffice to create a genuine issue of material fact as to negligence. *See, e.g., Collins v. Northwest Airlines, Inc.*, 875 F.Supp. 64, 67–68 (D.Mass.1995) (holding that airline's ongoing opportunity to enforce a policy against children entering baggage room created genuine issue of material fact as to negligence). Conversely, when an accident happens so quickly that those in the vicinity simply do not have time to react constructively, their failure to prevent the accident is not evidence of negligence. *See id.* (holding, as a matter of law, that airline employees did not act negligently in failing to prevent an accident occurring seconds after child arrived in restricted area). It follows inexorably that where, as here, a landowner had no feasible opportunity to remove the instrument of injury that was brought into a child's zone of exposure by a third party,

---

2. The defendants attempt to take this point one step further, arguing that their duty toward their grandson was wholly negated when they left him alone with his mother. This argument is no mere makeweight, especially in regard to open and obvious risks. *See, e.g.,* *Baldwin v. Mosley*, 295 Ark. 285, 748 S.W.2d 146, 147 (Ark.1988). The Massachusetts courts have not passed upon the desirability of such a rule, however, and it is unnecessary for us to vaticinate whether Massachusetts would adopt it.

she cannot be held liable for an ensuing injury. *See Roderick,* 631 N.E.2d at 560; *see also Bandanza v. Town of Norwood,* 360 Mass. 860, 277 N.E.2d 300, 301 (Mass. 1971).

If more were needed—and we doubt that it is—we note that the record does not contain a shred of evidence that discharges from snowblowers often break windows. This lacuna renders the case at hand analogous to *Ted's Master Service, Inc. v. Farina Bros.,* 343 Mass. 307, 178 N.E.2d 268, 270 (Mass.1961), in which the Supreme Judicial Court approved a directed verdict in favor of an excavating company whose drilling was alleged to have damaged buildings (by vibration) well outside the radius of a standard survey. There, as here, the defendant had no forewarning, and the injury that occurred simply was not foreseeable.

■ We need go no further. Once their good-hearted neighbor took it upon himself to start snowblowing, there was nothing the Reeds reasonably could have been expected to do to prevent the broken window. Moreover, absent good reason to know that snowblowers were likely to smash windows, the Reeds had no reason to keep their grandchildren away from the dining room window during the snowblowing operation. Because the plaintiffs have not proposed any feasible precaution, much less any precaution required by ordinary prudence, that would have averted this freak accident,[3] the district court appropriately entered summary judgment.

*Affirmed.*

---

**3.** Although the Reeds had not installed storm windows, the plaintiffs concede that storm windows are intended to insulate a home, not to reinforce the windows against projectiles thrown by snowblowers. Hence, the failure to take such a precaution could not be deemed a proximate cause of the bizarre accident that occurred. *See Young v. Atlantic Richfield Co.,* 400 Mass. 837, 512 N.E.2d 272, 275 (Mass.1987).