**Dana ROCHLEAU, Plaintiff,**

v.

**TOWN OF MILLBURY, Richard Handfield, and Jane Doe, an Unidentified Police Officer Defendants.**

**No. CIV. A. 97–40208–NMG.**

United States District Court, D. Massachusetts.

Sept. 29, 2000.

Stephen Gordon, Stephen Gordon & Associates, Worcester, MA, for Plaintiff.

Joseph L. Tehan, Jr., Jonathan M. Silverstein, Kopelman & Page, P.C., Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff Dana Rochleau ("Rochleau") brought this action against the Town of Millbury ("the Town"), Richard Handfield, the Chief of Police for the Town ("the Chief"), and Jane Doe, an unidentified police officer, for damages allegedly sustained while confined in a Millbury Police Department holding cell.

Against the Town, Rochleau alleges (1) violations of his civil rights under the 4th, 5th and 14th Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983, (2) negligence, and (3) negligent infliction of emotional distress.

Against the Chief, Rochleau alleges (1) the same violations of his civil rights under said 4th, 5th and 14th Amendments, pursuant to 42 U.S.C. § 1983, and (2) intentional infliction of emotional distress.

Rochleau also alleges that the actions of both the Town and the Chief violated the provisions of M.G.L. c. 40, § 36(b).

Pending before this Court are motions by the Chief (Docket No. 23) and the Town (Docket No. 25) for summary judgment.

### I. Background

On the evening of August 8, 1994, Rochleau learned that the Police Department had a warrant for his arrest. He voluntarily presented himself at the police station and was arrested, booked and placed

in a cell. Rochleau does not challenge his arrest or the legitimacy of his detention in the Millbury jail.

The bars of the cells in the Millbury jail are covered with plexiglass from one or two inches above the floor to the ceiling, as is required by the state suicide prevention law, M.G.L. c. 40, § 36(b). Ventilation in the cells is provided by a vent designed to draw warm air from the top of the cell, allowing cool air to flow into the cell from the bottom. The ventilation systems in the cells must be activated manually.

Upon being placed in the cell, Rochleau went to sleep. He awoke about one hour later, experiencing chest pains and shortness of breath. He kneeled down on the cell floor and placed his face near the opening in an attempt to get some fresh air. He called out several times for help and requested to be taken to a hospital. The dispatcher on duty called an ambulance, paramedics arrived and Rochleau was taken to the hospital and admitted.

Upon admission to the hospital, Rochleau's symptoms had abated. His vital signs were normal, with the exception of a slightly elevated blood pressure. Various tests were conducted to rule out that Rochleau had suffered a heart attack and when the results returned, they were normal.

Several hours later, Rochleau was observed to be "awake" and "alert" and "denie[d] [chest pain] at present." When nursing staff attempted to place an intravenous tube in Rochleau he became "very agitated," stated that he "wanted to go back to the station [and] hopped off the examination table". As soon as he did, his color turned ashen and he fainted. A doctor who has been designated as Rochleau's expert attributed the fainting spell to Rochleau's sudden rise from the reclining position and a drop in his blood pressure.

Rochleau admits that he has not suffered any lasting physical effects from the incident and that he is mentally and physically healthy. He has had three or four nightmares since the incident and claims that the lack of ventilation in the jail cell caused his shortness of breath and chest pain.

## II. Discussion

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery on file and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the record in the light most hospitable to the non-moving party and indulge all reasonable inferences in his favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

### A. Rochleau's Claims against The Town

#### (1) § 1983

Municipalities cannot be held liable for constitutional torts under 42 U.S.C. § 1983 on a respondeat superior theory. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities may be sued for their own unconstitutional or illegal policies, but not for the acts of their employees. *Id.* A municipal liability claim under § 1983 requires proof that the municipality maintained a policy or custom which caused, or was the moving force behind, a deprivation of constitutional rights. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 819, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *see Monell* at 694,

98 S.Ct. 2018. Existence of a municipal policy is shown by:

a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

A custom or practice must be attributable to the municipality, i.e., it must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Miller v. Kennebec County*, 219 F.3d 8 (1st Cir.2000).

■ Rochleau fails even to *allege* that the Town has an illegal policy or custom with respect to the conditions at the jail or the provision of medical care to pre-trial detainees. The Board of Selectmen is the final policymaker with respect to police department matters, but Rochleau's complaint does not contain a single allegation regarding the Board's knowledge, action or inaction on the matters at issue.[1]

■ Nor is the Town liable based on a policy of inadequate training and supervision. To establish an official policy of inadequate training or supervision, a plaintiff must show proof of deliberate indifference by the local government. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Courts have found deliberate indifference where a city fails to act in response to repeated complaints of constitutional violations by its officers. *See e.g. Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991). A single alleged incident of individual misconduct will not, however, support a claim that the Town failed to train, supervise or discipline police officers. *Hathaway v. Stone*, 687 F.Supp. 708, 710–11 (D.Mass.1988). Rochleau has presented no evidence of "deliberate indifference" by the Town.

## (2) **Negligence and (3) Negligent Infliction of Emotional Distress**

With regard to the negligence and negligent infliction of emotional distress claims, the Town offers four arguments in support of its motion for summary judgment. The town contends that (a) it did not breach any duty owed to Rochleau, (b) even if it did, it is immune from liability under the discretionary function exception to the Massachusetts Tort Claims Act ("the MTCA"), (c) Rochleau has failed to prove that the harm he alleges to have suffered was foreseeable, and (d) Rochleau has failed to adduce objective evidence of physical manifestations of severe emotional distress.

The MTCA states that

[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances.

M.G.L. c. 258, § 2 (1988 ed.).

■ To establish a claim for negligence under Massachusetts law, a tort plaintiff must show that the defendant owed him a duty, the defendant breached that duty, the breach constituted a proximate cause of the ensuing harm, and the breach caused actual injury. *See Fithian v. Reed*, 204 F.3d 306 (1st. Cir.2000); *Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 522 (1st Cir.1990); *Swift v. United States*, 866 F.2d 507, 508–09 (1st Cir.1989).

### (a) Breach of Duty

Rochleau appears to allege two bases for the negligence claims, first, that police personnel were unresponsive to his requests for medical attention, and second, that the cell in which he was incarcerated was uninhabitable.

---

1. The Town has adopted G.L. c. 41, § 97, the "weak police chief statute", which provides that "[t]he selectmen may make suitable regulations governing the police department...."

Regarding Rochleau's claim that police personnel did not respond to his requests for medical attention, it appears from the record that a period of one half hour at most passed between Rochleau's first complaint of chest pains and the time when paramedics arrived. By the time he had arrived at the hospital, his symptoms had abated.

█ Assuming Rochleau's negligence claims are predicated on the theory that the Town failed to train adequately its officers to provide medical care to detainees, Rochleau has failed to produce any evidence indicating that such training was not provided. On the other hand, the Town has presented evidence indicating that it complied with and exceeded all state statutory and regulatory requirements relating to the training of police officers in first aid and CPR, specifically, M.G.L. c. 111, § 201. Massachusetts courts have recognized that compliance with safety regulations is admissible to demonstrate a lack of negligence. *MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 139–140, 475 N.E.2d 65 (1985); *Rice v. James Hanrahan & Sons*, 20 Mass.App.Ct. 701, 708, 482 N.E.2d 833 (1985).

█ While compliance with a statute or regulation is not conclusive evidence in itself of due care, it is properly viewed as prima facie evidence of due care. *Id.* Hence, in the absence of any evidence offered by Rochleau that the Town failed adequately to train its officers to provide medical care to detainees, and in the face of evidence of the officer's training in first aid and CPR in compliance with and exceeding the requirements of state statutory regulations, Rochleau fails to show a breach of any duty of the Town.

█ With respect to Rochleau's claim that the cell was uninhabitable, the Town contends it has satisfied all applicable statutory and regulatory requirements regarding the conditions of cells in its detention facilities. The Town also indicates that its detention facility has consistently passed state agency inspections, including inspections of the ventilation and heating systems in the cellblock. The Town's maintenance of its facilities in compliance with state law constitutes prima facie evidence that it exercised due care in the maintenance of the detention facility.

Rochleau, on the other hand, presents no evidence that the subject standards were not met. He states simply that those on duty that night had no memory of activating the ventilation system, and that the failure to establish a policy which required police officers to confirm that the ventilation system in the cell was functioning while a prisoner was incarcerated amounts to more than simple negligence. Those allegations, along with Rochleau's testimony concerning his breathing problems and chest pains in the cell, are insufficient to establish the Town's negligence with respect to the conditions of the cell in light of the Town's compliance with state detention facility requirements and the absence of any complaint prior to Rochleau's allegation regarding the cell's unfit condition.

**(b) Discretionary Function Exception**

█ The liability of a public employer under the MTCA is subject to several exceptions, including the "discretionary function" exception which provides, in pertinent part:

> The provisions of sections one to eight, inclusive, shall not apply to ... any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused ....

M.G.L. c. 258, § 10(b). In deciding whether a plaintiff's action is foreclosed by the discretionary function exception, the court conducts a two-part inquiry. It determines first whether the governmental actor had any discretion at all as to what course of conduct to follow and second whether the discretion that actor had

is the kind for which § 10(b) provides immunity. *Harry Stoller and Co., Inc. v. City of Lowell,* 412 Mass. 139, 141, 587 N.E.2d 780 (1992). The Act provides immunity only for discretionary conduct that involves policymaking or planning, as opposed to conduct which involves the implementation and execution of such governmental policy or planning.

 Assuming Rochleau argues that the Town had a duty to maintain the detention facilities in a condition better than that required by state statute and to provide training to its officers and other police personnel in excess of that required by state statute, it is clear that such decisions would involve discretionary conduct rather than the implementation of pre-existing governmental policy. Because the Town had already met the state requirements concerning cell conditions and the first aid training of its police personnel, any decision to require more would involve discretionary policy making and planning. *Compare Carleton v. Town of Framingham,* 418 Mass. 623, 626, 640 N.E.2d 452 (1994) (noting that no policy or planning consideration concerning law enforcement objectives or resources appeared to have been involved in police officer's failure to detain a known drunk in a place where almost all customers arrived by motor vehicle).

### (c) Foreseeable Harm

 The Town also argues that Rochleau's negligence claims should be dismissed because Rochleau has failed to present evidence that his harm was foreseeable. "Evidence that a precaution feasibly could have been taken to prevent a foreseeable injury sometimes may suffice to create a genuine issue of material fact as to negligence." *Fithian v. Reed,* 204 F.3d 306, 310 (1st Cir.2000). As noted earlier, the Town had no prior complaint with regard to the medical training of its officers or the conditions of its detention facilities. The Town was not put on notice of any alleged deficiencies with the training of its officers or of any alleged defective conditions in its detention facility prior to Rochleau's complaint. Rochleau's negli-

gence claims fail a create a genuine issue of material fact in this regard as well.

### (d) Physical Manifestations of Severe Emotional Distress

 Negligent infliction of emotional distress is a disfavored tort due to the "fear of fraudulent claims." *Bresnahan v. McAuliffe,* 47 Mass.App.Ct. 278, 283–84, 712 N.E.2d 1173 (1999). For that reason, plaintiffs must present "sufficient objective evidence of physical manifestations of mental distress to survive a summary judgment motion." *Sullivan v. Boston Gas Co.,* 414 Mass. 129, 134, 605 N.E.2d 805 (1993).

 Rochleau admits that he is "mentally and physically" healthy. He claims that he has suffered nightmares about the incident but he has shown no objective physical manifestations of distress as is required to recover for that tort under Massachusetts law. *Compare Bresnahan v. McAuliffe,* 47 Mass.App.Ct. 278, 282–83, 712 N.E.2d 1173 (1999) (uncontrollable crying spells, stomach pain, severe headaches, loss of concentration, depression, anger, anxiety, loss of her sexual relationship and attendance at grief-counseling sessions were physical manifestations of distress sufficient to survive summary judgment); *Ferragamo v. Chubb,* 894 F.Supp. 33 (D.Mass.1995) (headaches, nausea, and sleeplessness were the kind of physical manifestations of emotional distress that could sustain claim for negligent infliction of emotional distress).

### B. Rochleau's Claims against The Chief of Police

#### (1) § 1983

 Under the doctrine of supervisory liability, a supervisor (defined loosely to include a wide range of officials who are themselves removed from the rights-violating behavior), may be liable under § 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another. *Camilo–Robles v.*

*Hoyos,* 151 F.3d 1, 6–7 (1st Cir.1998), *cert. denied,* 525 U.S. 1105, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999), *citing City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). "Notice is a salient consideration in determining the existence of supervisory liability." *Id.*

 Nonetheless, supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior; he may be liable for the foreseeable consequences of rights-violating conduct if he would have known of it "but for his deliberate indifference or willful blindness." *Id., citing Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994). To demonstrate deliberate indifference, a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) the defendant's failure to take easily available measures to address the risk. *Id.*

 As mentioned above, neither the Town nor the Police Chief had received any complaints regarding the provision of medical care to detainees or cell ventilation. Therefore, the Police Chief did not have actual notice of those conditions which allegedly violated the plaintiff's rights.

Furthermore, Rochleau has not shown that the Chief acted with deliberate indifference, either with respect to ventilation in the cells or provision of medial care to detainees. As an initial matter, Rochleau has offered no evidence to show that the ventilation in his cell was not in operation on the night he was detained. Rochleau has failed to show that the Chief knew that a grave risk of harm existed but chose to ignore it. The Chief has shown that 1) the ventilation system was in operation prior to the night of Rochleau's confinement, 2) the holding cells consistently passed state inspection, and 3) neither the Chief nor the Town had ever received a complaint regarding the cells prior to the initiation of Rochleau's action.

Likewise, with respect to the provision of medical care, Rochleau has offered no evidence that the Town or the Chief ever received any complaint about such care at the Town jail.

### (2) Intentional Infliction of Emotional Distress

 To succeed on a claim for intentional infliction of emotional distress, a plaintiff must prove that:

a) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct,

b) the conduct was extreme and outrageous,

c) the conduct caused the plaintiff emotional distress, and

d) the emotional distress was severe.

*Agis v. Howard Johnson, Co.,* 371 Mass. 140, 144–145, 355 N.E.2d 315 (1976).

 The only factual allegation against the Chief in the Complaint is that

[t]he seriously adverse conditions of the cell in which Mr. Rochleau was held … was [sic] known to Richard Handfield for an extended period of time, the exact length of time is presently unknown to the plaintiff.

Such alleged conduct simply does not allow for recovery for intentional infliction of emotional distress.

As an initial matter, the claim is unsubstantiated. Rochleau, even after discovery, has failed to show that (1) any defective condition existed in the holding cell or (2) the Chief had any knowledge of such a defect. To the contrary, defendants have shown that the ventilation system was operational prior to the night of Rochleau's confinement, that the holding cells consistently passed state inspections and that neither the Chief nor the Town had ever received a complaint regarding the cells prior to the initiation of Rochleau's action.

Second, Rochleau fails to allege, much less provide evidence, that the Chief acted

with the requisite intent. All that the record shows is Rochleau's unsubstantiated and conclusory allegation that the Chief knew the allegedly adverse conditions existed for some period of time. There is no evidence that the Chief "... intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct." *Agis* at 144–145, 355 N.E.2d 315; *see also Berg v. Goldwyn*, 1995 WL 584525 (Mass. App.Div.1995) (summary judgment appropriate where record is silent as to any direct role played by the alleged tortfeasor in the misconduct). No genuine issue of material fact regarding intent exists in this case.

Finally, there is no evidence whatsoever that the alleged misconduct was "extreme and outrageous" which, under Massachusetts law, means behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Foley v. Polaroid Corp.*, 400 Mass. 82, 508 N.E.2d 72 (1987). The unsubstantiated conduct alleged by Rochleau does not even approach the level of "extreme and outrageous."

## C. Rochleau's Claims against the Town and the Chief for violating M.G.L. c. 40, § 36(b)

Rochleau alleges that "the actions of the defendants were in violation of M.G.L. c. 40, § 36(b) in that the defendants failed to monitor the plaintiff's condition as required by that statute."

Section 36(b) provides that:

each cell utilized for the detention of persons within a city, town or state lockup facility, under the jurisdiction of a local police department or the state police shall have a protective covering of high-impact, transparent wall facing. Such protective covering shall cover all bar structures accessible to such detained persons. Adequate ventilation shall be provided to persons detained in the cell.

The statute does not, however, create a cause of action for alleged violations of its prescriptions. "Absent an expressed intent by the legislature to create such a cause of action, none may be construed." *Pettingell v. City of Chelsea*, 161 Mass. 368, 369–70, 37 N.E. 380 (1894).

[N]o private action, unless authorized by express statute, can be maintained against a city for the neglect of a public duty imposed upon it by law for the benefit of the public and from the performance of which the corporation receives no profit or advantage.

*Id.* Thus, M.G.L. c. 40, § 36(b) provides no basis for recovery by Rochleau.

### ORDER

For the foregoing reasons,

(1) the motion for summary judgment by Chief Handfield (Docket No. 23) is **ALLOWED**, and

(2) the motion for summary judgment by the Town (Docket No. 25) is **ALLOWED.**

**So ordered.**