MICHAEL MIGLIORI vs. AIRBORNE FREIGHT CORPORATION
& another.[1]

Suffolk. December 9, 1997. - February 5, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Negligence,* Emotional distress. *Emotional Distress. Actionable Tort.*

Discussion of the limits of the scope of liability under Massachusetts law for
claims of emotional or psychological injuries. [631-633]
Discussion of appellate court decisions in other jurisdictions regarding the
scope of liability for negligent infliction of emotional distress. [634-635]
This court concluded that a person who witnesses or comes upon the scene of
an accident and voluntarily renders aid to a victim to whom the person has
no familial or other preexisting relationship, and who suffers severe
emotional distress leading to physical problems after such a rescue attempt
fails, does not have a cognizable claim for negligent infliction of emotional
distress under Massachusetts law. [633, 636-638]

CERTIFICATION of a question of law to the Supreme Judicial
Court by the United States District Court for the District of
Massachusetts.

*Douglas J. Beaton* for the plaintiff.

*Steven C. Malone* for the defendants.

FRIED, J. This case comes before us on certification from the
United States District Court for the District of Massachusetts of
the following question:

"Does a person who witnesses or comes upon the scene
of an accident and voluntarily renders aid to a victim to
whom he or she has no familial or other pre-existing
relationship, have a cognizable claim for negligent inflic-
tion of emotional distress under Massachusetts law if 1)
the rescue attempt fails, and as a result, 2) the rescuer suf-
fers severe emotional distress which 3) further leads to
physical problems?"

For the reasons set forth below, we answer the question in the
negative.

[1]Louis Giangregorio.

I

Given the procedural posture of this case, we accept as true all the factual allegations that the plaintiff makes and draw all reasonable conclusions in his favor.

The plaintiff, Michael Migliori, is a petty officer first class in the United States Navy. In August, 1990, he was stationed at the Navy-Marine Corps Reserve Center in Lawrence. He is trained in cardiopulmonary resuscitation (CPR), and his duties at Lawrence included giving CPR instruction to other military personnel and local high school students.

At approximately noon, on August 27, 1990, the plaintiff was walking down Congress Street in Boston. There, he came upon Joanne Perkins who had been negligently struck by a van operated by the defendant Louis Giangregorio and owned by the defendant Airborne Freight Corporation. It is not clear whether the plaintiff actually witnessed the accident or came upon the scene only after the accident. The plaintiff immediately went to Perkins's aid. On discovering that Perkins had no pulse, the plaintiff began to administer CPR and managed to restore Perkins's heartbeat on two brief occasions. Perkins was bleeding from her eyes, ears, nose, and mouth, as well as from other injured areas of her body, and the plaintiff became drenched in blood in the course of administering CPR. Public safety personnel soon responded to the accident, and the plaintiff watched as they placed Perkins in an ambulance and drove away. Perkins was taken to Massachusetts General Hospital and was pronounced dead at 12:30 P.M.

As a result of this failed rescue attempt, the plaintiff has developed various symptoms of emotional distress that have further led to physical problems. The plaintiff apparently blames himself for Perkins's death, and is of the opinion that he has failed at the most important thing in his life. At the time of the accident, Perkins and the plaintiff were strangers.

On July 22, 1996, the plaintiff filed a Federal diversity action pursuant to 28 U.S.C. § 1331 (1994) asserting a claim for negligent infliction of emotional distress. The defendants, in response, filed a motion for prediscovery summary judgment and contended that, under Massachusetts law, the plaintiff cannot assert a claim for negligent infliction of emotional distress stemming from Perkins's death because he did not have a preexisting familial or other close relationship with Perkins. The

plaintiff responded by claiming that, under the rescue doctrine, he, as a rescuer, had the requisite close relationship with Perkins to enable him to bring a suit.

Although the District Court judge was of the opinion that allowing the plaintiff to proceed on his theory would unduly expand the scope of liability for negligent conduct, he certified the question to this court for an authoritative determination of Massachusetts law.

## II

Our past decisions dealing with claims of emotional or psychological injuries reflect two broad concerns. The first has to do with the difficulty of proving damages in cases involving claims of emotional injuries, or the difficulty of discriminating between real and fraudulent or imagined emotional injuries. See, e.g., *Payton* v. *Abbott Labs*, 386 Mass. 540, 546-547 (1982). The second arises from the need to impose some limits on the scope of liability, both with respect to the class of potential plaintiffs and the injuries for which such plaintiffs may claim compensation. Where the mechanism by which injury comes about includes the psychological, both the class of plaintiffs and kinds of claims are greatly and predictably expanded. We recognized in *Dziokonski* v. *Babineau*, 375 Mass. 555, 567 (1978), that the class of persons vicariously affected by a tortfeasor's conduct may be very large. As the New York Court of Appeals once stated, "[e]very injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." *Tobin* v. *Grossman*, 24 N.Y.2d 609, 619 (1969).

These two concerns have moved this court to draw various distinctions in dealing with emotional injuries. Thus, until very recently, moved primarily by the idea that attendant physical harms validate plaintiffs' claims for emotional injuries, this court drew a sharp distinction between cases involving negligently caused emotional injuries with attendant physical harm, and those without attendant physical harm, and held that cognizable claims for recovery are stated only in the former. Compare *Freyermuth* v. *Lutfy*, 376 Mass. 612 (1978), with *Payton* v. *Abbott Labs*, *supra*. In *Sullivan* v. *Boston Gas Co.*, 414 Mass. 129 (1993), we abandoned the so-called physical harm rule. While no longer considering attendant physical harm as a

necessary condition of a cognizable claim for the negligent infliction of emotional injuries, we still required "objective corroboration of the emotional distress alleged." *Id.* at 137-138, quoting *Payton* v. *Abbott Labs, supra* at 547.

Our second concern, to limit the scope of potential liability, has led us to discriminate among classes of plaintiffs. Not every bystander plaintiff who can show emotional injury, the defendant's negligence, and the causal connection between the two states a cognizable claim. We have imposed relational, temporal, and spatial limits on the scope of liability for emotional harm: Only a bystander plaintiff who is closely related to a third person directly injured by a defendant's tortious conduct, and suffers emotional injuries as the result of witnessing the accident or coming upon the third person soon after the accident, states a claim for which relief may be granted. *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 518-519 (1980); *Dziokonski* v. *Babineau, supra* at 568.[2]

At the same time, we have sought to draw lines that are not arbitrary. *Dziokonski* v. *Babineau, supra* at 568. The concern for proof seems to justify the requirement of close "familial or other relationship." *Id.* A parent of or another person closely related to a third person directly injured by the tortfeasor's conduct is more likely to suffer more severe emotional injuries than others who witness the accident or come upon the third person's impaired condition. As a leading text noted: "It seems sufficiently obvious that the shock of a mother at danger or harm to her child may be both a real and a serious injury. All ordinary human feelings are in favor of her action against the negligent defendant." W.L. Prosser & W.P. Keeton, Torts § 54

---

[2]Similar conditions are required in bystander cases involving intentional or reckless inflictions of emotional injuries. Unlike cases involving negligently inflicted emotional injuries, this court has, from early on, allowed recovery for intentional or reckless inflictions of emotional injuries even in the absence of attendant physical harm. See *Simon* v. *Solomon*, 385 Mass. 91 (1982); *Agis* v. *Howard Johnson Co.*, 371 Mass. 140 (1976). In *Nancy P.* v. *D'Amato*, 401 Mass. 516, 522 (1988), after deciding that a mother cannot recover for emotional distress she suffered after finding out that her daughter was sexually molested by a neighbor several months before, this court stated:

"Even if the family member's presence were not a condition of liability [for intentional or reckless infliction of emotional distress], we would normally require both (a) substantially contemporaneous knowledge of the outrageous conduct and (b) a severe emotional response."

at 366 (5th ed. 1984). To be sure, a distant relative or an unrelated person may also genuinely suffer severe emotional distress on witnessing an accident. See *Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal. 2d 295, 313 (1963), quoting *Hambrook* v. *Stokes Bros.*, 1 K.B. 141, 158-159 (1925). Yet, as the Appeals Court once recognized in denying relief to a mother who suffered emotional distress upon witnessing an automobile accident that she erroneously believed involved her son, any distinction made is in "fair measure a pragmatic judgment rather than a systematic application of a general principle." *Barnes* v. *Geiger*, 15 Mass. App. Ct. 365, 369 (1983).

The requirements of spatial and temporal proximity are even more obviously grounded in practical need to draw a determinate line against excessive liability. In *Ferriter* v. *Daniel O'Connell's Sons, supra* at 518, we recognized that "[a] plaintiff who rushes onto the accident scene and finds a loved one injured has no greater entitlement to compensation for that shock than a plaintiff who rushes instead to the hospital." In general, we must acknowledge that these requirements of proximity are based more on the pragmatic need to limit the scope of potential liability, than on grounds of fairness or other imperatives of corrective justice.

### III

We now apply the distinctions and limitations growing out of the two concerns discussed above to answer the question presented in this case.

### A

We begin by affirming our reluctance to expand the class of bystanders who may recover for emotional distress or the circumstances in which the members of that class may recover. See *Stockdale* v. *Bird & Son*, 399 Mass. 249 (1987) (mother who did not see son's injured body until twenty-four hours after accident at funeral home not entitled to recover); *Cohen* v. *McDonnell Douglas Corp.*, 389 Mass. 327 (1983) (executor of estate of mother who did not learn of her son's death in airplane crash until seven hours after the crash could not recover); *Miles* v. *Edward O. Tabor, M.D., Inc.*, 387 Mass. 783 (1982) (mother who suffered emotional distress as the result of doctor's negligence at her son's birth, which led to the son's death two months later, did not have a cause of action).

In recent years, other jurisdictions have declined to expand the scope of liability for negligent infliction of emotional injuries, and indeed have interpreted strictly the limitations already recognized in their case law. The Supreme Court of · California was the first to recognize that a bystander, who was in no danger himself, and who witnessed an accident directly injuring another, might have a cause of action for negligent infliction of emotional injuries. *Dillon* v. *Legg*, 68 Cal. 2d 728 (1968). The *Dillon* court confined its holding to cases involving familial, temporal, and spatial proximities. *Id.* at 740-741.[3] Subsequently, however, confusion ensued in lower courts in delineating the scope of the proximities required.[4] The California court's intention to rein in the excesses of *Dillon* first surfaced in *Elden* v. *Sheldon*, 46 Cal. 3d 267 (1988). In that case, the court strictly interpreted the requirement of familial proximity, and held that an unmarried cohabitant of the person directly injured may not recover damages for emotional distress. *Id.* at 277. In *Thing* v. *La Chusa*, 48 Cal. 3d 644 (1989), the court abandoned a case-by-case approach to delineating the scope of the several proximities. The plaintiff in *Thing* was a mother who was nearby, but did not see or hear the automobile accident involving her son. She became aware of the injury to her son when her daughter informed her of the accident. She rushed to the scene where she suffered emotional injuries as the result of seeing her bloody and unconscious son and thinking him dead. The court denied that the mother stated a cognizable claim for relief, and reasoned:

"Greater certainty and a more reasonable limit on the exposure to liability for negligent conduct is possible by limiting the right to recover for negligently caused emotional distress to plaintiffs who personally and

[3]We followed California's lead when we stated in *Dziokonski* that whether a bystander can recover depends on "a number of factors, such as where, when, and how the injury, to the third person entered into the consciousness of the claimant, and what degree there was of familial or other relationship between the claimant and the third person." *Dziokonski* v. *Babineau*, 375 Mass. 555, 568 (1978), citing *Dillon* v. *Legg*, 68 Cal. 2d 728, 740-741 (1968).

[4]In a 1985 case, two Justices writing separate opinions admitted that the proximity requirements of *Dillon* have proved to be troublesome and that the California Supreme Court must face many outstanding questions in the near future. See *Ochoa* v. *Superior Court*, 39 Cal. 3d 159, 178 (1985) (Grodin, J., concurring); *id.* at 182 (Bird, C.J., concurring and dissenting) ("What has followed in *Dillon*'s wake is confusion rather than clarity").

contemporaneously perceive the injury-producing event and its traumatic consequences.

"Similar reasoning justifies limiting recovery to persons closely related by blood or marriage since, in common experience, it is more likely that they will suffer a greater degree of emotional distress than a disinterested witness to negligently caused pain and suffering or death. Such limitations are indisputably arbitrary since it is foreseeable that in some cases unrelated persons have a relationship to the victim or are so affected by the traumatic event that they suffer equivalent emotional distress. As we have observed, however, drawing arbitrary lines is unavoidable if we are to limit liability and establish meaningful rules for application by litigants and lower courts."

*Id.* at 666.

The Court of Appeals of New York has been even stricter in interpreting limitations to liability in cases involving claims for emotional injuries. Having initially declined to adopt the holding of *Dillon*, see *Tobin* v. *Grossman*, 24 N.Y.2d 609 (1969), the court later adopted the so-called zone of danger rule in *Bovsun* v. *Sanperi*, 61 N.Y.2d 219, 230-231 (1984): Where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover damages for emotional injuries he sustained as a result of observing in close proximity the serious injury or death of a member of his immediate family. In *Trombetta* v. *Conkling*, 82 N.Y.2d 549 (1993), the New York court construed strictly its *Bovsun* holding, and held that a niece, who had had an unusually close relationship with her aunt, did not state a cognizable claim in bringing a suit to recover for emotional injuries suffered as a result of being in close proximity to an accident in which the aunt was hit by a truck and died. The court reasoned that a niece does not come within the boundaries of the "immediate family." *Id.* at 552.[5]

---

[5]The drafters of the Restatement (Second) of Torts also adopted the zone of danger rule. See Restatement (Second) of Torts § 313 (2) and comment d, § 436 (2), (3) and comment f (1965). The caveat to § 436 states that the drafters of the Restatement express no opinion as to cases involving a plaintiff's "shock or fright at harm or peril to a third person who is not a member of his immediate family, or where the harm or peril does not occur in his presence."

· B

The plaintiff asks us to include rescuers in the class of bystanders who state a cognizable claim for negligent infliction of emotional harm. He argues that foreseeability is the measure of duty, and that he, as a rescuer, was a foreseeable plaintiff. In *Wagner* v. *International Ry. Co.*, 232 N.Y. 176, 180 (1921), Judge Cardozo famously observed:

> "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer. . . . The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man."

He went on to conclude that a rescuer can sue a tortfeasor for injuries sustained in the attempt to rescue.[6]

We too have recognized the rescue doctrine. But, as the Appeals Court pointed out once, our sparse case law on the matter goes no further than to hold that rescuers are not, as matter of law, precluded from recovery because they voluntarily placed themselves in danger. See *Barnes* v. *Geiger*, 15 Mass. App. Ct. 365, 370 (1983), citing *Brown* v. *Hathaway Bakeries, Inc.*, 312 Mass. 110, 113-114 (1942); *Burnett* v. *Conner*, 299 Mass. 604, 607-608 (1938); *Barnes* v. *Berkshire St. Ry.*, 281 Mass. 47, 49-50 (1932). See also *Dixon* v. *New York, N.H. & H.R.R.*, 207 Mass. 126, 130 (1910).

The precise scope of the rescue doctrine in this Commonwealth is beside the point, however, as foreseeability is not the real issue. It is true that our analysis in *Dziokonski* was framed in terms of reasonable foreseeability. *Dziokonski* v. *Bab-*

---

[6]We note that the Court of Appeals of New York, although adhering to *Wagner* v. *International Ry. Co.*, 232 N.Y. 176 (1921), held in a 1981 case that a rescuer cannot recover for emotional injuries sustained in an attempt to rescue. *Lafferty* v. *Manhasset Medical Ctr. Hosp.*, 54 N.Y.2d 277, 279 (1981). A contrary decision, according to the *Lafferty* court, would have been an unwarranted expansion of liability. *Id.* Given New York's rejection of *Dillon* and adoption of the zone of danger rule, *Lafferty* provides little guidance on the application to rescuers of our more generous rules of liability for emotional distress.

*ineau, supra* at 567-568. Also, the Supreme Court of California observed that the evaluation of the three proximity factors will indicate "the *degree* of the defendant's foreseeability." *Dillon* v. *Legg, supra* at 741. Yet, as we also noted in *Dziokonski*, the concept of reasonable foreseeability hardly offers guidance, as judging an event to be reasonably foreseeable is a legal conclusion. *Dziokonski* v. *Babineau, supra* at 567. As the Supreme Court of California once stated, "in all save the most obvious of cases a harm is 'foreseeable' only if, in the final analysis, a court or jury says that it is." *Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal. 2d 295, 310 (1963). Legal rules determine the extent to which actors have incentives to be mindful of consequences of their actions. The plaintiff simply begs the question in claiming that he has a cognizable claim because he, as a rescuer, was a reasonably foreseeable sufferer of emotional harm. "If foreseeability be the sole test, then once liability is extended the logic of the principle would not and could not remain confined." *Tobin* v. *Grossman, supra* at 616. Cf. *Nycal Corp.* v. *KPMG Peat Marwick LLP, ante* 491, 494 (1998) (foreseeability should not be standard for the extent of accountants' liability lest accountants be exposed to "a liability in an indeterminate amount for an indeterminate time to an indeterminate class"), quoting *Ultramares Corp.* v. *Touche*, 255 N.Y. 170, 179 (1931).

We have had no occasion to decide how closely a person has to be related to a third person directly injured by a tortfeasor in order to have a cognizable cause of action for negligent infliction of emotional distress. Persons bearing close "familial or other relationship" to the directly injured third person comprise a discrete and well-defined class, membership in which is determined by preexisting relationships. The class of rescuers, by contrast, may be very large indeed. It is called into being by the very event which is the occasion of liability, and inclusion within it is by virtue of a volunteered action by the putative claimant.

Finally, it is far from clear what kind of action a person must take to be considered a rescuer. Can a witness to an accident from a fourth story window, who telephones 911, be considered a rescuer? If so, there is very little to distinguish the rescuer from the kind of unrelated bystander on whom we have declined to confer a cause of action. Yet, such a caller may well be taking more effective action, of a sort that the law should encour-

age, than one who becomes more intimately and dangerously involved.

## IV

To answer the question put to us by the District Court, we conclude that a person who witnesses or comes upon the scene of an accident and voluntarily renders aid to a victim to whom he or she has no familial or other preexisting relationship, does not have a cognizable claim for negligent infliction of emotional distress under Massachusetts law if (1) the rescue attempt fails, and as a result, (2) the rescuer suffers severe emotional distress which (3) further leads to physical problems.