Toomey, J.
In this action, John M. Lajoie, on behalf of himself and as administrator of the estate of his deceased infant son, Jeremy R. Lajoie (collectively the “plaintiffs”), is suing to recover damages from his wife’s former employer and co-workers after they allegedly improperly revealed that she had requested, and been granted, a job transfer. The amended six-count complaint, broadly read, seeks relief under theories of wrongful death (Counts I and II), loss of consortium (Count III), and negligent and intentional infliction of emotional distress (Counts IV,.V and VI).[3]
The individual defendants, Paul DeFillipi, Irma Syzmanski and Nancy Piliponis (collectively the “defendants”), now move for partial summary judgment, pursuant to Mass.R.Civ.P. 56(c), as to Counts IV, V and VI. Put simply, the instant motion requires this court to determine whether, as a matter of law, a fetus can suffer either intentional or negligent infliction of emotional distress. Plaintiffs contend that fetal emotional distress is, in appropriate factual circumstances, a viable cause of action. Defendants respond that Massachusetts law does not recognize such a tort. For the reasons set forth more fully below, this court finds that the defendants have the better of the argument and will ALLOW their motion.
BACKGROUND
The undisputed material facts, when viewed in a light most favorable to the plaintiff, are as follows. Beginning in March 1988 and ending on March 18, 1996, Susan Lajoie (Susan), wife of the plaintiff, John M. Lajoie (John), and mother of the decedent, Jeremy Lajoie (Jeremy) was employed as a part-time technician at the University of Massachusetts Medical Center Blood Bank (UMASS Medical). At some point during her employment, UMASS Medical instituted a confidentiality policy and procedure to protect its patients and employees. Employees were required to sign the Confidentiality Agreement; its purpose was to “assure that employees will not knowingly disclose the confidentiality of records/files on patients, employees and students.” See Exhibit B attached to plaintiffs’ opposition to defendants’ motion for summary judgment. Confidential information was defined to include “any information where the individual, hospital(s), or physician(s) is named or otherwise identifiable.” Id.[4]
In the summer of 1994, Susan sought a job transfer to the day shift, and, on several occasions, she discussed job opportunities with other departments of UMASS Medical; she “wanted her request for a job transfer to be kept strictly confidential” pursuant to the UMASS Medical Confidentiality Agreement. Further, she requested that she not be contacted at work with regard to her interest in any new position.[5]
Sometime in June 1994, Susan learned that she was pregnant.
On or about September 6, 1994, after applying for and accepting a transfer to the day shift, Susan learned that several of her co-workers had found out of her proposed shift change. On the morning of September 7, 1994, Susan awoke at approximately 4:00 a.m. to discover that her amniotic sac had ruptured and that amniotic fluid was leaking. Medical tests revealed that there was little hope that the fetus, Jeremy, would survive.
On September 8, 1994, Susan went into labor and gave birth to Jeremy who had reached the gestational age of 17 weeks. Jeremy lived for approximately twenty-five minutes before dying on the morning of September 9, 1994. Thereafter, John was appointed the Administrator of Jeremy’s estate.
After complying with the notice requirement set forth in G.L.c. 258, §4, the plaintiffs filed the instant action on September 5, 1997. The defendants now move for partial summary judgment.
DISCUSSION
I. Standard of Review
The function of summaiy judgment is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Sup.2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonina, 71 F.3d 29, 33 (1st Cir. 1995). The criteria are familiar: this court grants summary judgment where there are no genuine issues of material fact, and if, viewing the entire record in a light most flattering to the non-movant, the proponent demonstrates its entitlement to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.R 56(c). This maybe done by, inter alia, showing an absence of evidence to support the plaintiffs’ position. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
*740 Once the defendants have carried this burden, the onus shifts to the plaintiffs. “In order to survive the swing of the summary judgment axe,” Mack v. Great Atlantic and Pacific Tea Co, Inc., 871 F.2d 179, 181 (1st Cir. 1989), the plaintiffs must produce evidence on which a reasonable finder of fact could base a verdict for them. See McKenzie v. Brigham & Women’s Hosp., 405 Mass. 432, 437-38 (1989); Michaelson v. Digital Financial Servs., 167 F.3d 715, 720 (1st Cir. 1999) (same).
With the above standards in mind, this court concludes, for the reasons stated infra, that the plaintiffs have failed to satisfy their burden, and thus the defendants’ motion must be granted. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Kourouvacilis v. General Motors Corp., 410 Mass. at 716.[6]
II. Analysis of the Defendants’ Motion A. Intentional Infliction of Emotional Distress.
As a general matter, Massachusetts law is settled that, in order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish:
(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, . . . (2) that the defendant’s conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiffs distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.
Tetrault v. Mahoney. Hawkes & Goldings, 425 Mass. 456, 466 (1997),. quoting Payton v. Abbott Labs, 386 Mass. 540, 555 (1982). Whether one may recover either directly or vicariously, as a “bystander,” for emotional distress intentionally inflicted while en ven-tre sa mere is, however, an issue of first impression in the Commonwealth.[7] As such, this case presents the court with “a classic question of the evolution of the common law.” Migliori v. Airborne Freight Corp., 952 F.Sup. 38 (D.Mass. 1997) (Young, J.), certified question answered 426 Mass. 629 (1998).
At bar, the defendants argue that there is absolutely no evidence that they intentionally inflicted emotional distress upon Jeremy. Further, they contend that, even if Jeremy experienced emotional distress, defendants’ conduct — to wit, discussing Susan’s job search and prospects — does not rise to the level of actionable “extreme and outrageous conduct” required by Tetrault and Payton. This court agrees. Given the absence of any direct guidance in Massachusetts on the under lying issue, this court looks to extra-jurisdictional precedent.
In Patterson v. Xerox Corp., 901 F.Sup. 274 (ND.Ill. 1995), a federal district court addressed the very issues presented in the instant case. In Patterson, an employee sued her employer and co-worker, on behalf of herself and her child, alleging, inter alia, intentional infliction of emotional distress. Patterson claimed that her supervisor’s harassment proximately caused the premature birth of her child and his consequent medical treatment, including hernia surgery. Id. at 276-77. While acknowledging that the repeated harassment of a pregnant woman could “indeed be extreme and outrageous conduct,” the court declined to extend a cause of action for prenatal emotional injuries as a result of intentional conduct. Id. at 280. The court noted that “one problem would be in proof that a fetus can suffer emotional distress.” Id. See also Zepeda v. Zepeda, 41 Ill.App.2d 240, 254 (1st Dist. 1963) (“it would be an interesting speculation whether a charge of mental distress and emotional suffering could be made and sustained in behalf of an infant”). Those sentiments are compelling.
Here, the plaintiffs have produced no evidence in response to the defendants’ motion other than deposition testimony revealing that Susan’s job search was, arguably, “public knowledge” at UMA.SS Medical. That the defendants may have intentionally revealed Susan’s job prospects does not, ipso facto, metamorphose such a potentially actionable violation of Susan’s rights under the Confidentiality Agreement into an intent to inflict emotional distress upon her fetus. Furthermore, passing for the moment whether Jeremy was even capable of suffering emotional distress, the record is also entirely devoid of any etiological nexus between the alleged wrongful acts of the defendants and the claimed emotional injury to Jeremy.
Finally, this court determines that, as a matter of law, the defendants’ alleged conduct (i.e. revealing and discussing that Susan had applied for and accepted a job transfer) does not constitute the type of “profoundly shocking conduct” or "high order of reckless, ruthlessness or deliberate malevolence” that courts of the Commonwealth have found to be intolerable in a civilized community. See Conway v. Smerling, 37 Mass.App.Ct. 1, 8-9 (1994), and cases cited. See also Tetrault v. Mahoney. Hawkes & Goldings, 425 Mass. at 466, quoting Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987) (“Liability cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions or other trivialities nor even is it enough that the defendant has acted with an intent which is tor-tious or even criminal or that he has intended to inflict emotional distress or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort”).
Because, as Chief Justice John Marshall once stated, ”[I]t is most emphatically the province and duty of the judicial department to say what the law is,” and not what it should be, Marbury v. Madison, 5 U.S. (1 *741 Cranch) 137, 177 (1803), this court concludes that it ought not to extend, in the absence of clear legislative authority to the contrary, the Commonwealth’s law of intentional infliction of emotional distress beyond its traditional boundaries. The creation of a cause of action premised upon the intentional infliction of emotional distress on a fetus, later live-born, is better left to the Legislature. See Thibert v. Milka, 419 Mass. 693, 696 (1995) (declining to expand statutory liability for wrongful death). The defendants’ motion for summary judgment is thus ALLOWED with respect to those portions of Counts IV, V and VI that seek relief for intentional infliction of emotional distress.
B. Negligent Infliction of Emotional Distress
Under Massachusetts law, a plaintiff seeking to recover for negligent infliction of emotional distress, must allege and prove:
(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symp-tomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. Central to this last concept is reasonable foreseeability . . . Reasonable forseeability is a proper starting point in determining whether an actor is to be liable for the consequences of his negligence.
Migliori v. Airborne Freight Corp., 952 F.Sup. at 39-30 (internal quotation marks and citations omitted). See Bresnahan v. McAuliffe, 47 Mass.App.Ct. 278, 285 (1999); Payton v. Abbott Labs, 386 Mass. at 556.[8] It is thus axiomatic that, in order to recover for negligently inflicted emotional distress (or, at a bare minimum, to withstand the instant motion), the plaintiffs must, as a threshold matter, present some evidence from which a trier of fact might find both that the defendants were negligent and that their negligence caused Jeremy’s emotional distress. This, the plaintiffs have not accomplished.
We are instructed by the Supreme Judicial Court that, “(n)egligence ... in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances.” Beaver v. Costin, 352 Mass. 624, 626 (1967). Furthermore, “[d)ue care does not require that special precautions be taken against that which is only remotely possible.” Marengo v. Roy, 318 Mass. 719, 722 (1945). “Only where no view of the evidence could warrant a jury in finding the defendant negligent can it be held as a matter of law that the plaintiff cannot recover.” Beaver, supra at 626.
In that definitional context, plaintiffs ask this court not only to expand the common law by affording a fetus (or, as at bar, a twenty-five minute old infant) a cause of action for psychic trauma notwithstanding the absence of evidence thereof, but also to find it reasonably foreseeable that Jeremy would be injured by the defendants’ discussing Susan’s job search and job transfer. The instant circumstances do not permit this court either so to afford or so to find. See generally, J. Greenberg, Reconceptualizing Preconception Torts, 64 Tenn.L.Rev. 315, 355 (1997).
While the defendants may have negligently revealed Susan’s “confidences” by discussing her job prospects, no rational view of the evidence at bar, even one suffused with sympathy for Susan’s and Jeremy’s losses, would warrant a finding either that Jeremy suffered resulting emotional distress or that the defendants negligently caused him physical harm in the nature of premature birth and consequent death. Moreover, in light of the Supreme Judicial Court’s “reluctance to expand the class of bystanders who may recover for emotional distress or the circumstances in which the members of that class may recover,” Migliori v. Airborne Freight Corp., 426 Mass. at 633 (and cases •cited), this court must embrace a like reluctance and decline, on these facts, to permit recovery by plaintiffs under a negligent infliction of emotional distress theory. As observed by Migliori, “every injury has ramifying consequences, like ripplings of the waters without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.” 426 Mass. at 631, quoting Tobin v. Grossman, 24 N.Y.2d 609, 619 (1969). The conclusion reached at bar pays homage to the primacy of the Legislature in establishing those remedial limits.
The defendants’ motion for summary judgment is ALLOWED with respect to those portions of Counts IV, V and VI that seek relief for negligent infliction of emotional distress.[9]
ORDER
It is hereby ORDERED that the defendants’ motion for summary judgment is ALLOWED with respect to Counts IV, V and VI.

Specifically, Counts I and II seek relief from the Commonwealth of Massachusetts on the grounds of wrongful death, Count III sounds in loss of consortium against the Commonwealth, and Counts IV, V and VI seek relief from Paul DeF-illippi, Irma Syzmanski and Nancy Piliponis respectively on the grounds of infliction of emotional distress.

Based on the reported evidence, it is unknown whether Susan Lajoie ever received a copy of, or indeed signed, the so-called Confidentiality Agreement. For purposes of the instant motion, taking all facts in a light most favorable to the plaintiffs, this court assumes that, at all relevant times, Susan was aware of the Confidentiality Agreement and relied upon it.

The plaintiffs do not allege, nor is there evidence, that Susan ever communicated her desire to keep confidential her request for a job transfer. Nor is it clear whether Susan’s alleged request for confidence (or her job search in and of *742 itself) was the type of information or data that was protected by the Confidentiality Agreement. For purposes of the instant discussion, however, this court assumes that her job search was, in fact, confidential.

Despite the judicial reluctance to award summary judgment in negligence actions, that reluctance is diluted where, as here, the plaintiffs have omitted to supplement the record with admissible materials tending to demonstrate the viability of their complaint. See Bergendahl v. Massachusetts Electric Co., 45 Mass.App.Ct. 715, 719 (1998).

Éven reading the underlying amended complaint broadly so as to do substantial justice, Mass.R.Civ.P. 8(f), we are unclear whether the plaintiffs contend that the defendants intended to cause harm directly to Jeremy, or whether the plaintiffs seek to recover, as “bystanders,” on account of intentional emotional harm caused to his mother, Susan. Given the conclusion reached here, however, the lack of clarity is immaterial. See Nancy P. v. D‘Amato, 401 Mass. 516, 522 (1988) (acknowledging Restatement (Second) of Torts §46(2) (1965), which extends right of recovery for intentional infliction of emotional distress to present family members, but finding “even if the family member’s presence were not a condition of [vicarious] liability, we would normally require both (a) substantially contemporaneous knowledge of the outrageous conduct and (b) a severe emotional response”) (emphasis added). In light of the fact that Jeremy had not yet been born at the time of the defendants’ alleged extreme and outrageous conduct, this court finds that, while he may have been “present,” there is no evidence at bar that he was capable of knowing about such conduct, and he is, therefore, unable to recover vicariously as a “bystander” for wrongs purportedly committed against his mother, Susan. See Anthony H. v. John G., 415 Mass. 196 (1993); Zachary v. Centrus Premier Home Care, Inc., Civil Action No. 99-0839A, 1999 WL 1295110 (Mass.Super.Ct. Oct. 15, 1999) [10 Mass. L. Rptr. 738]; Moore v. Johnson, 826 F.Sup. 1106, 1110 (W.D.Mich. 1993) (awarding summary judgment to defendant and declining to extend right of recovery for intentional infliction of emotional distress to infant on grounds that infant not physically present when alleged conduct occurred; after the fact discovery of the defendant’s alleged outrageous conduct would not suffice).

While expert medical evidence would be helpful to a plaintiffs demonstration of the requisite physical manifestation of mental distress, such expert evidence is not, contrary to the defendants’ assertions, mandated by Massachusetts law. Bresnahan v. McAuliffe, 47 Mass.App.Ct. 278, 285 (1999), citing Sullivan v. Boston Gas Co., 414 Mass. 129, 139 (1993).

Given the result reached here, this court need not address the defendants’ remaining arguments.