Gants, J.
The plaintiff, Mary Conley (“Ms. Conley”), is a sixth grade teacher at a suburban middle school in the Boston metropolitan area. The defendant John Doe (“John”) was a sixth grade student in her English class and homeroom last school year. According to her Complaint, on Friday, January 12, 2001, in study hall, she saw John writing on a piece of paper with a black marker and observed that he had written the words, “People I Want to Kill,” across the top of the paper. No names had been written on the paper. Ms. Conley confiscated the paper and brought John to the school office, informing school authorities of what she had found.
On Wednesday, January 17, Ms. Conley learned that school authorities had discovered on January 12 a second piece of paper that had been written by John and that also was entitled, “People I Want to Kill,” but this paper included the names of nine people, including Ms. Conley. This second piece of paper was written less neatly than the piece of paper that Ms. Conley had found. Therefore, she inferred that John was either re-writing this first piece of paper onto a new page when she discovered him in study hall, or was seeking to add more names to the list, since he had run out of room on the second piece of paper. When Ms. Conley learned of the piece of paper that included her name on January 17, she left the school building and is “deathly afraid” of returning.
At roughly 1:30 p.m. on January 19, 2001, school officials met with John’s parents, James Doe and Jane Moe (“John’s parents” or “the parents”), telling them that John could not return to school until, among other things, he had completed a psychological evaluation. Early that same evening, one of John’s parents *60 accompanied John to school before a school dance and delivered to a school official what the parent contended was a full and complete psychological evaluation of John, as had been required by the school. Having received that evaluation, the school allowed John to attend the school dance that evening. Ms. Conley contends that this purported psychological evaluation could not have been a genuine full and complete psychological evaluation of John, because it was produced in too short a time.[2] She alleges that the psychological evaluation submitted to the school was a misleading and fraudulent document, having been prepared by one or both of John’s parents, or by another person who was under their control and supervision.[3]
Ms. Conley alleges in her Complaint that the school failed to take any meaningful disciplinary action against John and allowed him to return to school, even though he may pose a serious risk of harm. She further alleges that the school’s failure to take meaningful disciplinary action against John resulted from threats and intimidation by John’s parents, including the threat by John’s mother of a lawsuit if the school took strong disciplinary action or publicized what he had done.[4]
Ms. Conley alleges eight counts in her complaint:[5]
1. Intentional infliction of emotional distress against all defendants — John and John’s parents;
2. Assault against John;
3. Negligence against John;
4-7. Negligence against John’s parents;[6] and
8. Civil conspiracy.
The defendants now move to dismiss all eight counts of the Complaint, contending that each fails to state a claim under Mass.R.Civ.P. 12(b)(6). After hearing, for the reasons stated below, the motion to dismiss the Complaint is ALLOWED.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the factual allegations of the complaint and all reasonable inferences favorable to the plaintiff which can be drawn from those allegations. Fairneny v. Savogran, 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The issue is whether the facts alleged, generously construed in favor of the plaintiff, state a valid legal claim that would warrant relief on any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). In considering the motion to dismiss, this Court will consider each alleged cause of action, although (for reasons that will become clear) not in the order alleged.
Count 2 — Assault
For John to have committed the tort of assault, he must have engaged in conduct that put Ms. Conley in reasonable apprehension of an imminent harmful or offensive contact with her person. Commonwealth v. Delgado, 367 Mass. 432, 437 n.3 (1975), quoting Restatement 2d: Torts, §31(1965). Words alone cannot constitute the tort of assault “unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person.” Id.
Here, the Complaint alleges nothing more than words written on two sheets of paper. These words cannot constitute even a criminal threat unless they were communicated by John to Ms. Conley. See Commonwealth v. Milo M., 433 Mass. 149, 158 (2001). The Complaint does not allege that John communicated any words, orally or in writing, to Ms. Conley; she observed John writing the first piece of paper (which did not contain her name) in study hall and was informed by school authorities that the second piece of paper (which did contain her name) had been found. Nor is there any other conduct alleged, apart from the mere writing of these words, that put Ms. Conley in reasonable apprehension of an imminent harmful or offensive contact with John. Mere uncommunicated words, no matter how frightening, are not sufficient to constitute a tortious assault.
This Court is mindful that Ms. Conley alleges that she feared that John would carry out these words, and the Court respects that she is sincere in her fear. But the fact remains that a sixth grader does not assault a teacher by privately writing that he wants to kill her. Otherwise, a student writing such thoughts at home in his private journal would be assaulting a teacher once she somehow obtains a copy of the journal entry. At the very least, the student must in some fashion act to communicate that intention to the teacher before the expression of these private thoughts becomes a tortious assault. Here, since the Complaint makes clear that John did not act to communicate those thoughts to Ms. Conley, she has failed to state a claim for assault.
Count 1 — Intentional Infliction of Emotional Distress
“To prevail on [her] claim for intentional infliction of emotional distress, the plaintiff must establish ‘(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, but also (2) that the defendant’s conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiffs distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.’ ” Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997), quoting Payton v. Abbott Labs, 386 Mass. 540, 555 (1982). This Court finds, as a matter of law, that a sixth grader does not engage in conduct that is “extreme and outrageous, beyond all *61 possible bounds of decency and utterly intolerable in a civilized community,” when he privately writes that he wants to kill a teacher but does not act to communicate that intent to the teacher. Such conduct, however sad and disturbing, cannot rise to the level of triggering a claim for intentional infliction of emotional distress unless, at the very least, the student acts to communicate that intention to his teacher. In short, if the conduct fails to constitute a criminal threat because the student has not acted to communicate the threat, it fails to state a cause of action for the tort of intentional infliction of emotional distress.
Count 3 — Negligent Infliction of Emotional Distress
Ms. Conley alleges that, if John’s writings were intended as a joke or prank, then his conduct was negligent. Since the only damages she alleges result from her emotional distress, this claim of negligence must meet the stringent limitations imposed by the Supreme Judicial Court on claims for the negligent infliction of emotional distress. In Migliori v. Airborne Freight Corp., the Supreme Judicial Court discussed the need, when “dealing with claims of emotional or psychological injuries, ... to impose some limits on the scope of liability, both with respect to the class of potential plaintiffs and the injuries for which such plaintiffs may claim compensation.” 426 Mass. 629, 631 (1998). This need caused the Court to impose “relational, temporal, and spatial limits on the scope of liability for emotional harm: Only a bystander plaintiff who is closely related to a third person directly injured by a defendant’s tortious conduct, and suffers emotional injuries as the result of witnessing the accident or coming upon the third person soon after the accident, states a claim for which relief may be granted.” Id. at 632. There is no doubt that the plaintiff, on the facts alleged, fails to meet these criteria.
Counts 4-7 — Parental Negligence
Although it is not entirely clear from the face of the Complaint, Ms. Conley appears to allege that John’s parents are personally liable on two theories of negligence. First, she alleges that John’s parents are liable in negligence because they knew or should have known of the “propensity” of their child “to cause deadly harm, or to threaten to do so,” and yet failed to take preventive action. Complaint at 7-8. Second, she appears to allege that John’s parents are also liable in negligence for having submitted a purportedly false and fraudulent psychological evaluation to school officials in order to obtain their permission for John to return to school, and for having threatened a lawsuit if they refused. On the facts alleged in the Complaint, neither of these theories states a cognizable claim.
As to the first theory, it fails on three independent grounds. First, it, too, is essentially a claim for negligent infliction of emotional distress, and fails to meet the stringent criteria for such claims.
Second, since John’s conduct does not constitute a claim in tort, there cannot be a claim in tort against his parents for failing to prevent that conduct. “A parent has a duty to exercise reasonable care to prevent his minor child from intentionally or negligently inflicting harm on others, where the parent knows or should know of the child’s propensity for a particular type of harmful conduct and has the opportunity to take reasonable corrective measures.” Alioto v. Marnell, 402 Mass. 36, 38 (1988). Since this Court has already ruled that a child does not commit a tort by writing, but not communicating, frightening words, the parents cannot be said to have a legal duty to prevent that conduct.
Third, assuming that John indeed has a propensity to cause deadly harm, as the plaintiff alleges, there is no allegation that he has acted on this supposed propensity. Therefore, in essence, the plaintiff is arguing that John’s parents are negligent for failing to prevent violent acts that have yet to occur, but for which John has a propensity to commit. ”[T]here cannot be recovery for emotional distress damages for fear of future injury.” Urman v. South Boston Savings Bank, 424 Mass. 165, 171 (1997).
As to the second theory of negligence, the plaintiff does not have standing to complain about documents that John’s parents submitted to school officials or discussions that John’s parents had with school officials regarding John’s suspension. A teacher in a school cannot bring a cause of ¿ction against a parent for that parent’s conduct with school administrators. Certainly, a teacher cannot contend that she, as a matter of law, is a third-party beneficiary of a school’s decision to suspend a student.
Count 8 — Civil Conspiracy
To prevail on a civil conspiracy claim, the plaintiff must prove one of two theories: either that the defendants engaged in concerted action to commit a tort against the plaintiff or, if there was no independent basis for imposing tort liability, that the defendants combined to accomplish an unlawful purpose (or a lawful purpose by unlawful means) through some peculiar power of coercion over the plaintiff that they would not have had if they acted individually. See Kurker v. Hill, 44 Mass.App.Ct. 184, 188 (1998). Here, the underlying conduct alleged does not constitute a tort, so the defendants cannot be found to have conspired to engage in that conduct. Nor is there (or reasonably can there be) any allegation that the defendants had some peculiar collective power of coercion. Consequently, the civil conspiracy claim must fail.
Conclusion
Since none of the eight counts state a claim that is cognizable in law, the defendants’ Complaint must be dismissed. While I dismiss the Complaint, I recognize, as did the Supreme Judicial Court in Commonwealth v. Milo M., supra, 433 Mass. at 156-57, that there have *62 been some recent highly-publicized shootings in school, including shootings of teachers, and that teachers cannot easily ignore information that a student, even a sixth grade student, wishes them dead. By dismissing this Complaint, I am not minimizing Ms. Conley’s fears or declaring them to be an over-reaction. Rather, I am simply declaring that, when a student privately writes down such a death wish but does not act to communicate that wish to the teacher he may hate, the teacher’s remedies rest with the school administration, not a court of law.
ORDER
For the reasons stated above, this Court hereby ORDERS that the defendants’ motion to dismiss is ALLOWED. Judgment shall issue on behalf of the defendants, with statutory costs awarded to them.

 Ms. Conley declares in her complaint that the defendants have refused to produce a copy of this evaluation to her, which permits the inference that she has not seen this evaluation.

 The Complaint alleges that John’s father is a professional in the field of either psychology or psychiatry.

 The Complaint alleges that John’s mother is an attorney.

 The Complaint actually includes nine counts, but Count 9 is simply a claim for equitable relief, and is more accurately characterized as a prayer for equitable relief than as a separate cause of action.

 Count 4 alleges negligence against both parents. Counts 5 and 7 allege negligence against John’s mother only. Count 6 alleges negligence against John’s father only.