CARMEN RODRIGUEZ & another[1] vs. CAMBRIDGE HOUSING AUTHORITY.

Middlesex. December 8, 2004. - March 18, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & CORDY, JJ.

*Negligence,* Emotional distress. *Emotional Distress. Damages,* Emotional distress.

Discussion of the legal framework for evaluating claims of negligent infliction of emotional distress. [700-702]

This court concluded that, in an action for injuries that the plaintiffs (mother and son) sustained as a result of multiple invasions of their apartment, which they leased from the defendant public housing authority, the plaintiffs were entitled to recover damages for certain claims of emotional distress, where there was sufficient evidence that the emotional distress of the son (a bystander to one incident), as manifested by physical symptoms, satisfied the temporal, spatial, and relational requirements for such a claim [702-703]; and where the mother, with regard to one incident where she was neither the victim of a physical assault nor a witness to such an assault on a family member or to the actual invasion of her home, presented sufficient objective evidence for the jury to infer that a reasonable person would have experienced emotional distress when faced with the trauma that she had experienced [703-705].

CIVIL ACTION commenced in the Superior Court Department on August 23, 1995.

The case was tried before *Martha B. Sosman,* J., and entry of dismissal was ordered by *Leila R. Kern,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John Egan* for the defendant.

*Jonathan A. Karon & John A. Dalimonte* for the plaintiffs.

SPINA, J. In this case, we consider whether Carmen Rodriguez (Carmen) and her son, Samuel Rodriguez (Samuel) (collectively, the plaintiffs), are each entitled to recover damages from the Cambridge Housing Authority (CHA) for their alleged emotional

---

[1]Samuel Rodriguez.

distress resulting from several invasions of the apartment that Carmen leased from the CHA. Answering special questions, a jury found that the CHA had been comparatively negligent as to the maintenance of the premises by failing to change the door locks, and that such negligence had been a proximate cause of two of the three home invasions. The jury awarded Carmen damages of $170,000 for all injuries caused by the home invasion on May 18, 1994, awarded Samuel emotional distress damages of $130,000 for that same incident and awarded Carmen emotional distress damages of $30,000 for the home invasion on June 4, 1994. The trial judge allowed the CHA's motion for judgment notwithstanding the verdict and entered a final judgment dismissing the plaintiffs' complaint.

The Appeals Court reversed so much of the judgment as dismissed the plaintiffs' claims against the CHA,[2] and ordered that judgment enter on the verdicts for the plaintiffs, with certain modifications to the damages awards, as required under § 2 of G. L. c. 258, the Massachusetts Tort Claims Act. See *Rodriguez v. Cambridge Hous. Auth.*, 59 Mass. App. Ct. 127 (2003). The Appeals Court concluded, inter alia, that Samuel could recover for the emotional distress that he had suffered as a result of the May 18 home invasion, and that Carmen could recover for the emotional distress that she had suffered as a result of the June 4 home invasion. *Id.* at 138. We granted the CHA's application for further appellate review, limited specifically to the issue of the plaintiffs' recovery of damages for emotional distress.[3] As to that issue, the judgment of the Superior Court dismissing the

---

[2]Several other claims raised by the plaintiffs in their complaint had already been dismissed by way of summary judgment.

[3]The Cambridge Housing Authority (CHA) has not claimed in this appeal that Carmen was not entitled to recover damages for both the physical injuries and emotional distress she suffered as a result of the May 18 home invasion. We have stated that "[w]here plaintiffs have suffered directly inflicted personal injuries as a result of a defendant's negligence, courts have not been reluctant to allow recovery for emotional distress, occurring contemporaneously with those personal injuries, as an additional element of damages." *Payton* v. *Abbott Labs*, 386 Mass. 540, 548 (1982). See *Dziokonski* v. *Babineau*, 375 Mass. 555, 559 (1978). Therefore, Carmen was properly entitled to appropriate damages for the injuries she sustained as a result of the May 18 incident.

plaintiffs' complaint is reversed.[4]

1. *Background.* The factual and procedural history of this case is set forth in the Appeals Court opinion. We describe only those facts relevant to this limited appeal.

On July 17, 1985, Carmen signed a lease with the CHA to rent an apartment for her family in the Jefferson Park housing development in Cambridge beginning on August 1. On the morning of May 12, 1994, Carmen was attacked by a masked intruder who said that he was there to kill her. After the intruder punched Carmen and sliced her with a small knife, Carmen managed to get out the back door and escape. The Cambridge police investigated the matter and found no signs of forced entry. Carmen's daughter called her mother's psychotherapist, Dr. Mauricia Alvarez, who, in turn, contacted the CHA to express her concern for Carmen's safety and to request additional patrols.

Approximately one week later, during the early morning of May 18, 1994, Carmen was attacked again by a masked intruder in her bedroom. The intruder punched Carmen in the face, "hogtied" her with wire around her wrists and ankles, wrapped nylon stockings around her neck and mouth, and made small cuts all over her body. When Carmen's children awoke, they heard their mother moaning from her bedroom. Hearing the children approach, the intruder fled. Samuel, who was twelve years old at the time, unlocked the bedroom door with an electrical cord plug and found his mother face down on the bed with her hands and legs tied behind her back, gasping for air. Samuel and his sister tried to untie their mother, but were unable to do so, and had to wait for the police to arrive to free her.

As a consequence of this second attack and the resulting trauma, both Carmen and Samuel were admitted to Cambridge Hospital for seventeen days. Carmen was diagnosed as suffering from the symptoms of posttraumatic stress disorder and major depression. Samuel exhibited the symptoms of posttraumatic stress disorder, nightmares, and suicidal thoughts that necessitated observation every five minutes. Both were discharged

---

[4]As to those other issues raised by the parties before the Appeals Court, the decision of the Appeals Court is final and binding.

after intensive treatment with instructions for follow-up medication and therapy.

On June 4, 1994, the day after their release from Cambridge Hospital, Carmen and Samuel returned to their apartment with Samuel's older brother, Carlos Ocasio, whereupon they heard a plate crash to the floor, followed by the slamming of their back door. Carmen did not enter the apartment but, instead, ran to a friend's home across the street. Carlos proceeded to confront Joaquin Luciano, who had just been seen walking in the vicinity of the apartment and against whom Carmen had a protective order. Luciano pulled out a knife and severely cut Carlos's hand. Although Carmen did not observe the confrontation or the infliction of Carlos's injury, her condition at the time of the incident was very confused, shaken, and scared.

2. *Negligent infliction of emotional distress.* The framework for claims of negligent infliction of emotional distress was established in *Dziokonski* v. *Babineau,* 375 Mass. 555, 556 (1978), where this court abandoned the so-called "impact" rule that had denied recovery for physical injuries arising solely from negligently caused emotional distress, and not from any direct bodily injury. See *Spade* v. *Lynn & Boston R.R.,* 168 Mass. 285, 290 (1897). In *Dziokonski,* we held that an action could proceed against the driver of a motor vehicle that struck a child on allegations that the child's mother suffered emotional shock and consequent death when she went to the scene of the accident and saw her daughter lying injured on the ground. See *Dziokonski* v. *Babineau, supra* at 557, 568. In establishing the limitations of the claim by the mother, a bystander who had not been within the "zone of danger," we concluded that "there must be both a substantial physical injury and proof that the injury was caused by the defendant's negligence. Beyond this, the determination whether there should be liability for the injury sustained depends on a number of factors, such as where, when, and how the injury, to the third person entered into the consciousness of the claimant, and what degree there was of familial or other relationship between the claimant and the third person." *Id.* at 568. See *Migliori* v. *Airborne Freight Corp.,* 426 Mass. 629, 638 (1998) (person who witnesses or arrives at scene of accident and renders fruitless aid to victim to whom

there is no familial or other preexisting relationship does not have cognizable claim for negligent infliction of emotional distress).

This framework for emotional distress claims was broadened in *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507, 518 (1980), where we held that the wife and children of an employee allegedly injured through his employer's negligence could maintain an action for negligent infliction of emotional distress, even though they first observed the employee in the hospital, not at the scene of the accident. This court concluded that recovery was permissible not only for those plaintiffs who experienced shock on witnessing the injury to a loved one, but also for those plaintiffs who experienced shock on seeing the injured loved one "closely on the heels of the accident." *Id.*

The physical injury requirement set forth in *Dziokonski* v. *Babineau, supra* at 568, was slightly clarified in *Payton* v. *Abbott Labs,* 386 Mass. 540, 547 (1982), where this court stated that it was "in recognition of the tricks that the human mind can play upon itself, as much as of the deception that people are capable of perpetrating upon one another, that we continue to rely upon traditional indicia of harm to provide objective evidence that a plaintiff actually has suffered emotional distress."[5] In order to recover for negligently inflicted emotional distress, a plaintiff had to prove "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Id.* at 557. Moreover, the plaintiff was required to substantiate the physical harm with expert medical testimony. *Id.* at 556.

Recognizing the need to "strike a proper balance between the fear of fraudulent claims and the danger of shutting the doors of the courthouse to worthy plaintiffs" and the difficulty in "distinguish[ing] between the mental and the physical aspects

---

[5]"Although this court has allowed recovery for emotional distress absent physical harm, it has done so only where the defendant's conduct was extreme and outrageous, and was either intentional or reckless." *Payton* v. *Abbott Labs, supra* at 547. See *Simon* v. *Solomon,* 385 Mass. 91, 95 (1982); *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 144-145 (1976).

of an emotional disturbance," this court relaxed the physical harm requirement in *Sullivan* v. *Boston Gas Co.*, 414 Mass. 129, 134 (1993). There, we allowed the plaintiffs' claims to go forward where they had produced sufficient objective evidence that they were suffering from posttraumatic stress disorder, tension headaches, sleeplessness, gastrointestinal distress, nightmares, and depression as a result of watching their home burn to the ground after a natural gas explosion. *Id.* at 130-132, 139. We concluded, without distinguishing between bystanders and others, that "plaintiffs must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims" were likely genuine. *Id.* at 137-138. While expert medical testimony might be needed to make this showing, it was not mandatory. See *id.* at 138. See also *Bresnahan* v. *McAuliffe*, 47 Mass. App. Ct. 278, 285 (1999). The length of time that plaintiffs experienced particular symptoms could be one reliable indicator of the sufficiency of their evidence. See *Sullivan* v. *Boston Gas Co.*, *supra*.

Thus, in the *Sullivan* case, "[w]e did not eliminate the physical harm requirement, but merely expanded the range of symptoms that may provide the type of objective evidence to prove physical harm to include symptoms that could be classified as more 'mental' than 'physical.' " *Gutierrez* v. *Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 412 (2002), *S.C.*, 442 Mass. 1041 (2004). Contrast *Migliori* v. *Airborne Freight Corp.*, *supra* at 631-632, quoting *Sullivan* v. *Boston Gas Co.*, *supra* at 137-138 ("While no longer considering attendant physical harm as a necessary condition of a cognizable claim for the negligent infliction of emotional injuries, we still require 'objective corroboration of the emotional distress alleged' "). In addition, we have explicitly stated that "[a] successful negligent infliction of emotional distress claim . . . must do more than allege 'mere upset, dismay, humiliation, grief and anger.' " *Sullivan* v. *Boston Gas Co.*, *supra* at 137, quoting *Corso* v. *Merrill*, 119 N.H. 647, 653 (1979).

a. *Samuel Rodriguez.* The thrust of the CHA's argument is that Samuel's bystander claim is an impermissible attempt to expand recovery for the negligent infliction of emotional distress beyond the limits enunciated by our case law. We disagree.

Samuel was not an unknown bystander, and he did not lack proximity and immediacy to the home invasion on May 18. See, e.g., *Migliori* v. *Airborne Freight Corp.*, *supra* at 637-638; *Nancy P.* v. *D'Amato*, 401 Mass. 516, 519-520 (1988); *Stockdale* v. *Bird & Son*, 399 Mass. 249, 251-252 (1987); *Cohen* v. *McDonnell Douglas Corp.*, 389 Mass. 327, 341-343 (1983). To the contrary, there was sufficient objective evidence of Samuel's emotional distress, as manifested by physical symptoms, that satisfied our temporal, spatial, and relational requirements for such claims to allow for his recovery of damages. See *Sullivan* v. *Boston Gas Co.*, *supra* at 137-138; *Ferriter* v. *Daniel O'Connell's Sons*, *supra* at 518.

Samuel discovered his mother in a bedroom of their home in the brief aftermath of a violent attack that left her bound, gagged, slashed, and suffocating. Because Samuel was unable to free her from her restraints, Carmen continued to choke until the police arrived and cut her free. As a result of this incident, Samuel suffered such severe trauma that he had to be hospitalized for seventeen days, where he was plagued by symptoms of posttraumatic stress disorder, major depression, nightmares, and suicidal thoughts that necessitated constant observation. See note 8, *infra*. Samuel's claim for emotional distress damages went far beyond alleging mere upset, dismay, and grief. Rejecting that claim would not comport with this court's reasoning in *Sullivan* v. *Boston Gas Co.*, *supra* at 137-138, and our related jurisprudence. Accordingly, we conclude that Samuel was entitled to recover damages for negligent infliction of emotional distress for the May 18 home invasion.[6]

b. *Carmen Rodriguez.* The CHA contends that Carmen's claim for emotional distress, allegedly suffered as a result of the June 4 home invasion, must fail because she was not the victim of a physical assault, did not witness such an assault on a family member, did not witness the actual invasion of her home on that date, and offered no objective corroboration of any emotional distress arising from that event. Although the issue is close, we conclude that Carmen presented sufficient objective

---

[6]The damages cap set forth in G. L. c. 258, § 2, would reduce the jury's award of $130,000 in emotional distress damages to $100,000. See *Rodriguez* v. *Cambridge Hous. Auth.*, 59 Mass. App. Ct. 127, 138-139 (2003).

evidence of emotional distress to recover damages for this incident.[7]

Carmen sought recovery for the emotional trauma she allegedly suffered when, as she prepared to enter her apartment with her children, she heard the sound of a plate falling inside, heard the back door slam, and felt that "somebody was there." Carmen was so frightened that she screamed and ran to a neighbor's house. Because the jury concluded that the CHA's negligence was a proximate cause of this home invasion, the issues become whether the evidence supported a conclusion that there was "sufficient objective evidence of physical manifestation of mental distress," *Sullivan* v. *Boston Gas Co.*, *supra* at 139, and that "a reasonable person would have suffered emotional distress under the circumstances." *Payton* v. *Abbott Labs*, 386 Mass. 540, 557 (1982).[8]

In the aftermath of the June 4 home invasion, Carmen was

[7]We note that there is no support in the record for the Appeals Court's factual assertion that Carmen "saw her son slashed with a knife when he chased a person [whom] he believed was the intruder outside the apartment." *Rodriguez* v. *Cambridge Hous. Auth.*, *supra* at 139. Carmen testified that she did not witness the confrontation between Carlos and Luciano, although she did observe Carlos's severely injured hand in the immediate aftermath of the confrontation. Carmen's claim for emotional distress with respect to the events of June 4 is a personal claim based on the trauma of the home invasion, not a bystander claim related to the observation of Carlos's stabbing injury.

[8]The record that is before us now and the one that was before the Appeals Court are significantly different in that the Appeals Court record did not include treatment records and medical testimony pertaining to the plaintiffs' emotional distress. When the CHA filed its notice of cross appeal from entry of the judgment dismissing the plaintiffs' complaint in the Superior Court, the CHA merely stated that it was appealing "from the amount of the judgments entered against it on the jury verdicts returned in favor of the plaintiffs." In its brief in support of the cross appeal, the CHA then specifically challenged the evidentiary basis for the jury's conclusion that Samuel was entitled to emotional distress damages for the May 18 home invasion, and that Carmen was entitled to emotional distress damages for the June 4 home invasion. The plaintiffs' motion to strike the CHA's cross appeal was denied. The plaintiffs asserted in their reply brief that had they known that the CHA was going to challenge the evidence as to their emotional distress, they would have added to the record before the Appeals Court the documents pertaining to their medical treatment and the testimony of Dr. Alvarez, all of which had been admitted at trial. Notwithstanding the plaintiffs' belief that the CHA was required to furnish the Appeals Court with these additional materials, in accordance with Mass. R. A. P. 8 (b) (1), as amended, 430 Mass. 1603 (1999), the plaintiffs

treated at Cambridge Hospital by Dr. Alvarez, who indicated in her medical records that Carmen was very anxious, depressed, and overwhelmed. Dr. Alvarez further noted that Carmen was suffering from an increase in posttraumatic stress disorder, nightmares, insomnia, and dissociative episodes. At trial, Dr. Alvarez testified that where a patient has a prior history of trauma, any new trauma is "not just additive," but is "exponentially distressing and disruptive and disorganizing." Contrary to the CHA's assertion, Carmen experienced more than mere "upset and dismay" as a consequence of having her home invaded on June 4 and her sense of security shattered. See *Sullivan* v. *Boston Gas Co.*, *supra* at 135, 139. Cf. *Bresnahan* v. *McAuliffe*, 47 Mass. App. Ct. 278, 283, 285 (1999). Moreover, notwithstanding Carmen's history of mental health problems, and in light of the fact that she had just been the victim of two violent home invasions, there was sufficient evidence for the jury to infer that a reasonable person would have experienced emotional distress when faced with the trauma experienced by Carmen.

3. *Conclusion.* As to the plaintiffs' recovery of damages for emotional distress, the judgment of the Superior Court dismissing the plaintiffs' complaint is reversed. Judgment shall enter on the verdicts on those claims, as modified by the reductions in damages, pursuant to G. L. c. 258, § 2, set forth in the Appeals Court opinion. See *Rodriguez* v. *Cambridge Hous. Auth.*, *supra* at 138-141. Carmen is entitled to recover damages of $100,000 for all injuries caused by the home invasion on May 18, 1994,[9] Samuel is entitled to recover emotional distress damages of

---

did not, in the alternative, seek leave to supplement the record appendix. After we allowed the CHA's application for further appellate review, limited to the issue of emotional distress damages, the parties filed a joint motion to supplement the record to include the documents pertaining to the plaintiffs' medical treatment and the testimony of Dr. Alvarez. This court allowed the motion. Absent these supplemental materials, there was insufficient objective evidence of the physical manifestations of Carmen's emotional distress. There was only the testimony of Carmen, Carlos, and Samuel that, as a result of hearing the plate drop in her apartment, Carmen was scared, confused, and shaken.

[9]As to this incident, the jury found the CHA sixty-eight per cent negligent and Carmen thirty-two per cent negligent. Therefore, the $170,000 in damages awarded to Carmen by the jury would be reduced by her comparative negligence, and then the damages cap set forth in G. L. c. 258, § 2, would be applied. See *Rodriguez* v. *Cambridge Hous. Auth.*, *supra* at 138-141.

$100,000 for that same incident, see note 6, *supra*, and Carmen is entitled to recover emotional distress damages of $22,800 for the home invasion on June 4.[10]

*So ordered.*

---

[10]As to this incident, the jury found the CHA seventy-six per cent negligent and Carmen twenty-four per cent negligent. Therefore, the $30,000 in damages awarded to Carmen by the jury would be reduced by her comparative negligence. See *Rodriguez* v. *Cambridge Hous. Auth.*, *supra*.