Kirpalani, Maynard M., J.
INTRODUCTION
On September 10, 2010, the plaintiff, Raelisa Palacio (“Palacio”), filed the current action against the defendants, HSBC Bank, N.A. (“HSBC”), as trustee for the registered note holders of Renaissance Home Equity Loan Trust 2007-1, and Ocwen Loan Servicing, LLC (“Ocwen”) (collectively the “Defendants”), asserting claims for fraud (Count I), misrepresentation (Count II), breach of contract (Count III), and negligent infliction of emotional distress (Count IV), in connection with the servicing and modification of a mortgage secured by property located in Lynn, Massachusetts. This matter is currently before the court on the Defendants’ Motion for Summary Judgment and Palacio’s request for relief under Mass.R.Civ.P. 56(f) (“Rule 56(f)”).[3] For the reasons explained below, Palacio’s request for relief under Rule 56(f) will be DENIED and the Motion for Summary Judgment will be ALLOWED.
BACKGROUND[4]
On March 26, 2004, Palacio purchased real property located at 17 Chatham Street, in Lynn, Massachusetts (the “Property"). In connection with this purchase, on March 25, 2004, she executed two Mortgages and two Notes (the “2004 Mortgages") in favor of Mortgage Electronic Registration System, Inc. (“MERS”), consisting of a first adjustable-rate loan and a fixed-rate ten-year loan. The lender was Fremont Investment and Loan and the full amount of the two loans was $359,100.00.
Initially, the first, adjustable-rate loan carried an interest rate of 5.800%, requiring monthly payments of $2,107.04. After two years, the interest rate for the first adjustable-rate mortgage adjusted and then continued to adjust to a higher rate every six months. By October 2006, Palacio’s monthly payments had increased from $2,107.04 to $3,566.87. In addition, she was required to pay a monthly payment of $269.20 under the fixed-rate loam, which carried a 10.5000% interest rate for ten years.
At this time, in October 2006, Palacio began discussions with Fidelity Mortgage (“Fidelity”) regarding an attempt to refinance her 2004 Mortgages. Palacio had a very good credit score and was current in her payments. For more than two months, Palacio and Fidelity negotiated back and forth regarding a possible refinance. Palacio eventually executed a fixed-rate one hundred twenty month mortgage and note (the “Refinanced Mortgage”) with Fidelity. The Refinanced Mortgage was a stepped loan with an initial monthly payment of $3,489.21. This payment was less than the monthly payment due under the 2004 Mortgages.
After approximately a year, Palacio contacted Ocwen, her loan servicer, requesting a modification of the Refinanced Mortgage. On November 16, 2007, Palacio completed and returned the modification packet provided by Ocwen. Thereafter, Ocwen continually requested more financial documents and delayed in making any decision regarding the modification. Throughout this period, Palacio remained current on her mortgage payments. By May 2008, Palacio still had not heard from Ocwen regarding the requested modification and she retained counsel to assist with the negotiations. On May 20, 2008, Palacio’s counsel informed her that Ocwen was “confused” about her ability to pay since she had not missed any payments.
The Property contained a rental unit whereby Palacio earned $1,250.00 per month in rental income. In June 2008, Palacio lost this income when her tenant moved out. As a result, on June 2, 2008, Ocwen *309 granted Palacio an agreement for temporary forbearance.
On July 23, 2008, Palacio’s counsel informed her that Ocwen needed more financial documents from her. He also told her that, before Ocwen would assist her with a modification, she needed to be in default. Palacio did not pay her mortgage payment for July 2008. Around this time, Ocwen approved her for a trial modification, which required her to make two payments of $3,489.20, the first in July 2008 and the second in August 2008. Palacio made both payments.[5]
In August 2008, Palacio contacted Ocwen to ask about her September payment. Ocwen informed Palacio that it had canceled her modification and that she would have to reapply for a modification through the federal Home Affordable Modification Program (“HAMP”). While Palacio was in the process of applying for a HAMP modification, on October 20, 2008, she received a default letter from Ocwen.
On January 13, 2009, Palacio received a modification offer from Ocwen, which required a balloon payment at the end of the loan term. This was not a HAMP-approved modification. Shortly thereafter, on January 27, 2009, at Ocwen’s request, Palacio sent Ocwen a hardship letter, explaining why she was unable to make her payments. Subsequently, on February 9 and 16, 2009, Ocwen sent Palacio two additional modification offers. Neither of these modifications were HAMP-approved as each required a balloon payment at the end of the loan term. On May 19, 2009, having not accepted any of the modification offers, Palacio received another default letter from Ocwen.
On July 6, 2009, Ocwen requested, and Palacio supplied, additional financial documents. Thereafter, on September 2, 2009, Palacio received a letter from Ocwen indicating that her application had been received. In this letter, Ocwen requested even more financial documents.[6] On September 12, 2009, Palacio sent Ocwen her income tax return instead of the profit and loss statement requested. On September 13, 2009, Ocwen notified Palacio that it had received her tax documents. Nevertheless, on October 26, 2009, Ocwen notified Palacio, in writing, that she was not eligible for a HAMP modification because her application was missing required information. In response, on October 27, 2009, Palacio telephoned Ocwen and sent a letter by facsimile, inquiring as to what documents were missing from her application. Ocwen informed Palacio that she had not provided a proper profit and loss statement.
On November 18, 2009, Palacio received notice that Ocwen intended to proceed with foreclosure and sell the Property at auction. Thereafter, on December 15, 2009, Palacio received notification that foreclosure was to take place on January 18, 2010.[7] On January 8, 2010, Palacio was offered another loan modification; however, as with the previous modification offers, this offer did not comply with HAMP. The main problem with this modification was that the modified monthly payments exceeded 31% of Palacio’s monthly income. For this reason, Palacio did not accept the modification.
On February 17, 2010, after receiving a comparative market analysis for the Property, which was completed by a broker working for Century 21, Palacio submitted an updated profit and loss statement to Ocwen. Thereafter, Ocwen again requested additional financial information. On March 17, 2010, Palacio sent additional financial information to Ocwen. Shortly thereafter, Ocwen requested even more financial information, which Palacio submitted.
On April 17, 2010, Ocwen offered Palacio a trial period plan (‘TPP”) under HAMP. This TPP, however, included a monthly income that was more than triple Palacio’s actual income. Palacio immediately telephoned Ocwen to explain this error. She was unable to speak to an actual representative, but left a voicemail explaining the problem. In response, a representative from Ocwen, identified as “Ming,” sent a letter to Palacio, requesting that she send Ocwen a letter explaining the income error in writing. On April 28, 2010, Palacio sent the requested letter to Ocwen via facsimile. In addition, on April 30, 2010, per request, Palacio emailed additional financial documents to Ocwen.
On May 3, 2010, Palacio received an offer for a second TPP under HAMP. This offer calculated her monthly income to be twice her actual income. Upon receipt, Palacio immediately telephoned Ming, explaining that the monthly income included was still incorrect. In response, she received a return call from another representative, identified as “Santo,” who stated that he was covering for Ming. Santo informed Palacio that he would re-check her documentation for accuracy. Santo told Palacio that it was possible she did not qualify for the HAMP program. At this point, Palacio became upset, demanding to know why, if she did not qualify for a HAMP modification, had she received two TPP offers from Ocwen. Santo had no answer and he refused to send Palacio a statement in writing explaining why she was ineligible.
On May 25, 2010, Palacio left a message on Ming’s voicemail explaining, for the second time, the income error on the second TPP. Immediately thereafter, she scanned and emailed Ming a letter, explaining the error in writing, and describing the conversation she had had with Santo. On June 3,2010, Palacio received a return call from Ming. During this call, Palacio and Ming discussed the error. Ming placed Palacio on hold while she reviewed Palacio’s financial documents. Ming then quoted a monthly income of approximately $5,200.00. This figure was slightly higher than Palacio’s actual monthly income; however, it was close enough that Palacio agreed to accept this figure as an accurate recitation of her monthly income. When Pal *310 acio asked Ming what her monthly payment would be under the corrected TPP, Ming quoted the same monthly payment. Palacio asked how her TPP monthly payments could be the same when the original figure was based on an inaccurate monthly income, Ming stated she “did not make the rules." Palacio asked Ming to send a new TPP offer, including an accurate monthly income, to her in writing. Ming informed Palacio that she already had the modification offer and she could provide no additional help.
On July 19, 2010, Palacio attempted to contact her lender, Fidelity, directly. She called the number listed on her loan documents, but there was no response. Subsequently, after doing some internet research, Palacio learned that Fidelity had gone out of business. Palacio was never notified that her Mortgage Note had been assigned or transferred to another entity. Thus, on August 2, 2010, Palacio sent Ocwen a certified Qualified Written Request, asking it to identify her lender. On August 6, 2010, Ocwen notified Palacio, by mail, that she was no longer eligible for the HAMP modification because she failed to make the payments due under the TPP. Shortly thereafter, Ocwen notified Palacio that it was proceeding with foreclosure and that the Property would be sold on September 7, 2010. On September 10, 2010, Palacio filed the current action asserting claims against HSBC and Ocwen for fraud, misrepresentation, breach of contract, and negligent infliction of emotional distress.
DISCUSSION
Palacio’s Rule 56(f) Motion
Rule 56(f) is a “procedural escape hatch,” Argentieri v. Fisher Landscapes, Inc., 15 F.Sup.2d 55, 60 (D.Mass. 1998) (citations omitted), that describes “a method of buying time for a party who, when confronted by a summary judgment motion, can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition.” Resolution Trust Corp. v. North Bridge Assoc., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994) (discussing analogous federal rule). The decision to grant a motion under Rule 56(f) is left to the discretion of the motion judge. See A. John Cohen Ins. Agency, Inc. v. Middlesex Ins. Co., 8 Mass.App.Ct. 178, 183 (1979). “One common reason for denial of a continuance in this context is the irrelevance of further discovery to the issue being adjudicated on summary judgment." Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 308 (1991).
Here, according to Palacio’s Rule 56(f) affidavit, in March 2012, she received four affidavits from John O’Brien, Register of Deeds, which indicate that the title to the Property has been corrupted because the assignment of the mortgage was signed by “four known ‘robo-signers.’ ” Palacio argues continuance of the Motion for Summary Judgment is warranted, in light of this information, because further discovery time, with the assistance of the Attorney General, will enable her to demonstrate that the Defendants are “third-party strangers” to her mortgage without any ownership interest. The court disagrees, concluding Palacio is not entitled to relief under Rule 56(f).
Palacio asserts claims against the Defendants for fraud (Count I), misrepresentation (Count II), breach of contract (Count III), and negligent infliction of emotional distress (Count IV). In moving for summary judgment, the Defendants claim that Palacio has not pled sufficient facts to support these claims. Given the Defendants’ arguments, even if Palacio is able to obtain additional discovery, this information would not be helpful in opposing the Motion for Summary Judgment because it cannot be used to bolster claims that have not been adequately pled in her Complaint. For this reason, Palacio’s request for relief under Rule 56(f) will be DENIED.
Defendants’ Motion for Summary Judgment
In support of their Motion for Summary Judgment, the Defendants make three arguments. First, they argue they are entitled to summary judgment on Palacio’s claims for fraud and misrepresentation because she has failed to plead any facts which would give rise to such claims. Second, the Defendants contend summary judgment should enter in their favor on Palacio’s breach of contract claim because there was no contract between the parties. Finally, they assert they should be granted summary judgment on Palacio’s claim for negligent infliction of emotional distress because she has put forth no evidence demonstrating emotional distress. The court addresses these arguments below.[8]
I. Standard of Review
Summary judgment is appropriate when the record reveals “there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Siebe, Inc. v. Louis M. Gerson Co., 74 Mass.App.Ct. 544, 548 (2009). The moving party bears the initial burden of demonstrating the absence of triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the nonmoving party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings; rather, it must respond by alleging specific facts demonstrating the existence of a genuine fact. Correllas v. Viveiros, 410 Mass. 314, 317 (1991). The court views the evidence in the light most favorable to the nonmoving party, but does not weight evidence, assess credibility, *311 or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
II.Fraud (Count I) and Misrepresentation (Count II)
Claims for fraud and misrepresentation require proof that: the defendant made a misrepresentation of fact: it was made with the intention to induce the plaintiff to act upon it; it was made with the knowledge of its untruth; the plaintiff did in fact act upon it; and damage directly resulted therefrom. Graphic Arts Finishers, Inc. v. Boston Redev. Auth., 357 Mass. 40, 44 (1970); see also Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963).
Under Count I of the Complaint, Palacio alleges the Defendants “fraudulently made offers to Plaintiff for loan modification when Defendants knew that the information was incorrect.” And, that Defendants used “the knowingly false information ... in attempts to elicit more funds from Plaintiff then [sic] was allowed under HAMP[.]” Although the Complaint is not entirely clear on this point, the court infers that the “false information” Palacio speaks of is a reference to the fact that Ocwen incorrectly calculated Palacio’s monthly income and then relied on these inaccurate figures in formulating its modification offers. These allegations are not sufficient to support a claim of fraud. Even if the income figures were knowingly calculated incorrectly (which is not clear), there is no assertion or evidence of reliance. In fact, according to the Complaint, rather than relying on the figures presented by Ocwen, Palacio called Ocwen and requested that it correct the income errors.
Under Count II of the Complaint, Palacio alleges the Defendants “continually misrepresented . . . the status of her loan modifications.” And, as a result, she “was and continues to be damaged.” Here, Palacio does not set forth specifically what misrepresentations the Defendants allegedly made. In addition, again, there is no evidence of reliance. Palacio does not indicate that she changed her position in any way as a result of the Defendants’ conduct. There is also a question with respect to her alleged damages. Although the delays and requests for additional information in connection with her modification application were undoubtedly frustrating, the fact is, as a result of the lengthy modification process, Palacio has not made a mortgage payment since August 2008, and thus has lived in her home rent-free for four years.
For these reasons, the Motion for Summary Judgment will be ALLOWED as to Count I (fraud) and Count II (misrepresentation).
III.Breach of Contract (Count III)
To assert a valid breach of contract claim, the plaintiff must prove: (1) plaintiff had a valid contract with the defendant; (2) the defendant breached the contract; (3) and the plaintiff suffered damage as a result of the breach. Singarella v. Boston, 342 Mass. 385, 387 (1961).
Under Count III of the Complaint, Palacio alleges she “fully complied with the terms set forth in the loan modification agreements submitted to her, and Defendants then canceled agreements.” And that, she “was and continues to be damages [sic] by Defendants breach of contract.” The record, however, indicates there was no actual modification contract between Palacio and the Defendants. While Ocwen sent Palacio several modification offers, Palacio did not accept any of these offers.
Further, even had Palacio accepted one of the modification offers presented by Ocwen, her claim for breach of contract would still fall. In order to show a breach of contract, a plaintiff must demonstrate that the parties’ contract was supported by valid consideration. City of Revere v. Boston/Logan Airport Assoc., LLC, 443 F.Sup.2d 121, 126 (D.Mass. 2006). Palacio cannot make this showing. Making payments on her mortgage loan during the loan modification process or under the modification agreement does not constitute valid consideration because Palacio was under a preexisting duly to make those payments. See In re Loyd, Carr & Co., 617 F.2d 882, 890 (1st Cir. 1980) (“performance of a pre-existing legal duty that is neither doubtful nor subject to honest and reasonable dispute is not valid consideration”) (applying Massachusetts law).
For these reasons, the Motion for Summary Judgment will be ALLOWED as to Count III (breach of contract).
IV.Negligent Infliction of Emotional Distress (Count IV)
To recover for negligent infliction of emotional distress, the plaintiff must establish that: (1) the defendant was negligent; (2) plaintiff suffered emotional distress; (3) defendant’s negligence caused the emotional distress; (4) there was a physical manifestation of the distress; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. Rodrigues v. Cambridge Hous. Auth., 443 Mass. 697, 701 (2005). Physical harm to the plaintiff, manifested by objective symptomatology, is a critical element of this tort. Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). Therefore, a plaintiff must provide “sufficient objective evidence of physical manifestation [s] of mental distress to survive a summary judgment motion.” Sullivan v. Boston Gas Co., 414 Mass. 129, 139 (1993).
Here, at Palacio’s deposition, when asked about the symptoms of her distress, she stated, “Just can’t sleep." She has, however, provided no medical support for this assertion. Her self-serving statement indicating she is having trouble sleeping is, alone, insufficient to establish sufficient objective corroboration of physical manifestation of the emotional distress allegedly *312 caused by the Defendants. “[A] successful negligent infliction of emotional distress claim... must do more than allege ‘mere upset, dismay, humiliation, grief and anger.’ ” Sullivan v. Boston Gas Co., supra, at 137, quoting Corso v. Merrill, 119 N.H. 647, 653 (1979).
For these reasons, the Motion for Summary Judgment will be ALLOWED as to Count IV (negligent infliction of emotional distress).
ORDER
For the reasons set forth above, it is hereby ORDERED that:
1. Palacio’s request for relief under Rule 56(f) be DENIED-, and
2. the Defendants’ Motion for Summary Judgment be ALLOWED.

 Although Palacio has not technically filed a motion under Rule 56(f), she has filed an “Affidavit of Raelisa Palacio (Pro Se) Rule 56(f).” The court treats this as a request for relief under Rule 56(f).

 According to the Defendants, they sent Palacio a copy of their Statement of Undisputed Facts, on March 2, 2012, by first class mail and via email, but she did not respond or submit responses. As such, the Defendants statements of fact are deemed admitted. See Superior Court Rule 9A(b)(5). Nevertheless, to provide a more accurate and complete background section, and because doing so has no impact on the outcome of the Defendants’ Motion for Summary Judgment, the court recites the facts Palacio provided in her Complaint.

 The August 2008 payment was the last mortgage payment Palacio paid.

 Notably, this letter, which was dated September 2, 2009, demanded that Palacio submit the requested financial documentation by July 18, 2009, which date was two months prior to the request.

 This foreclosure was later postponed.

 At the hearing on the Motion for Summary Judgment, instead of opposing the Motion for Summary Judgment or arguing in favor of relief under Rule 56(f), Palacio focused her time on arguing for leave to amend her complaint. There is, however, at this time, no motion for leave to amend properly before the court and thus, the court does not address Palacio’s arguments related to her request to amend.